**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

C.P. FERRELL, INC., CHARLES FERRELL,     :
GARY B. LUNDY, LYNN HENNINGS,     :
PATRICIA LEWICK, CHRIS MCGIRT,     :
GEORGE POULLS, CINDY MILLER,     :
BRIAN TAYLOR, KEVIN STANFIELD,     :
MARK WHITE, TED E. WILCOX,     :
ROBERT L. WEITZEL and GIBSON PRYOR     :



                         :     Civil Action No: _____

            Petitioners,     :

                         :     **AGREED PETITION TO**
                         :     **CONFIRM ARBITRATION**
    -against-                 :     **AWARD AND FOR**
                         :     **ENTRY OF FINAL JUDGMENT**

BLIMPIE INTERNATIONAL, INC.,     :

                         :
            Respondent.   :

------------------------------------------------------------x

Petitioners, C.P. FERRELL, INC., CHARLES FERRELL, GARY B. LUNDY, LYNN

HENNINGS, PATRICIA LEWICK, CHRIS MCGIRT, GEORGE POULLS, CINDY MILLER,

BRIAN TAYLOR, KEVIN STANFIELD, MARK WHITE, TED E. WILCOX, ROBERT L.

WEITZEL and GIBSON PRYOR (hereinafter also collectively referred to as "Petitioners"), on

behalf of themselves and the Settlement Class (as defined herein), by and through undersigned

counsel and pursuant to 9 U.S.C. § 9, hereby file the instant Agreed Petition to Confirm

Arbitration Award and for Entry of Final Judgment, and state as follows:

     1.      This Court has jurisdiction to decide the instant matter pursuant to 9 U.S.C. §1, *et.*

*seq.*

     2.      Pursuant to the Franchise Agreements ("Franchise Agreements") executed by

each of the Petitioners and Respondent Blimpie International, Inc. ("Respondent" or "Blimpie"),

the parties were required to submit their disputes arising from their respective Franchise

Agreements to binding arbitration under the auspices of the American Arbitration Association.[1]

3.    In September 2002, the Association of Blimpie Franchisees, Inc. ("ABF"), of which many of the Petitioners are or were members, filed a demand in arbitration for damages and equitable relief against Blimpie.  Petitioners brought the subject arbitration proceeding against Blimpie principally to recover payments that Blimpie had received from certain suppliers to the Blimpie franchise system that Petitioners contended had been wrongfully diverted from an advertising and promotional fund for the benefit of all franchisees.  Thereafter, Petitioners, on behalf of themselves and all similarly situated Blimpie franchisees, substituted as claimants for the ABF and filed an amended class complaint.  Although a class was not certified at that time, the Arbitrator determined that the applicable arbitration clauses of the parties' Franchise Agreements permitted consolidation of the claims of the 13 named Petitioners against Blimpie.

4.    Michael D. Friedman was duly appointed as neutral arbitrator in the matter, and thereafter the parties engaged in extensive document discovery and depositions.  Following the close of discovery, a two-week evidentiary hearing was held in New York City.

5.    On or about November 15, 2006, prior to the conclusion of the evidentiary hearing, Petitioners and Blimpie reached a preliminary settlement (hereinafter "Settlement") which contemplated a global class resolution of the supplier payment dispute through a payment by Blimpie to an advertising fund for the benefit of all Blimpie franchisees.  After filing a Second Amended Class Action Complaint, Petitioners, on or about January 3, 2007, filed a Motion for Preliminary Approval of Settlement, Conditional Certification of Settlement Class, Appointment of Settlement Class Counsel and Settlement Class Representatives, Approval of Class Notice and Scheduling of Fairness Hearing.

---

[1] A copy of the relevant provisions from one of the Franchise Agreements is attached hereto as Exhibit "A."

6.      On April 30, 2007, the Arbitrator entered an Interim Partial Final Award pursuant to which the Settlement between Petitioners and Blimpie was preliminarily approved and submitted to the class members for an opportunity to be heard thereon.[2]  In accordance with the Settlement, the Arbitrator conditionally certified the Settlement Class as all current Blimpie franchisees throughout the United States ("Settlement Class" or "Class Members") and approved the form of class notice to be sent to all Class Members.[3]  The Arbitrator reserved ultimate decision as to the settlement between the Petitioners and Blimpie pending completion of the mailing of notice to Class Members and the opportunity of all interested parties to be heard at a fairness hearing.

7.      On August 7, 2007, after notice had been mailed to all Class Members, a Fairness Hearing was conducted.  No written objections to the Settlement were filed prior to the Fairness Hearing, nor did any parties appear at the Fairness Hearing to object to the Settlement.

8.      On November 7, 2007, the Arbitrator entered a Final Consent Award ("Award") finding the Settlement fair, reasonable and adequate, and in the best interests of the Settlement Class.  The Arbitrator also determined that the attorneys' fees requested by the Settlement Class Counsel were fair and reasonable. *See* Ex. "C."

9.      Accordingly, and consistent with the Settlement between the parties, the Arbitrator awarded the sum of $875,000.00 in favor of the Class Members and against Blimpie.  Specifically, Blimpie is to pay, commencing upon confirmation of the Award, the sum of

---

[2] A true and correct copy of the Interim Partial Final Award dated April 30, 2007 is attached hereto as Exhibit "B."

[3] The Settlement Class definition was later modified slightly to encompass all Blimpie franchisees that are parties to one or more existing franchise agreements with Blimpie and that currently or formerly operated one or more Blimpie restaurants pursuant to those agreements. See Final Consent Award dated November 7, 2007 at p. 2 fn. 1, a copy of which is attached hereto as Exhibit "C."

$437,500.00 into the Blimpie Brand Building Fund ("BBBF") in monthly installments of $12,500.00 each until such amount is paid in full. Blimpie is to pay the sum of $350,000.00 towards Petitioners' attorneys' fees and $87,500.00 towards reimbursement of Petitioners' out-of-pocket expenses incurred in the arbitration proceedings. *See* Ex. "C," ¶¶ 6-9, p. 13. As part of the Settlement, the Arbitrator ordered that upon confirmation of the Award, the claims in a putative class arbitration currently pending before the American Arbitration Association, entitled *CRB Enterprises, et al. and Blimpie International, Inc.*, Case No. 11 114 00886 06, which was filed by a Blimpie franchisee and contains the same claims as the arbitration that is the subject of this confirmation proceeding, be dismissed with prejudice. *See* Ex. "C," ¶ 11, pp. 14-15

10.     Pursuant to the arbitration provisions contained in the Franchise Agreements, "the confirmation of any award issued to either party by reason of an arbitration conducted pursuant to this arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*"

11.     9 U.S.C. § 9 states that "at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title [9 U.S.C. §§ 10, 11]." Moreover, as the Award reflects the Settlement reached between Petitioners and Blimpie, Blimpie does not oppose judicial confirmation of the Award.

12.     No impropriety existed in the arbitration proceedings, and none of the grounds listed in 9 U.S.C. §§ 10 and 11 as grounds to vacate or modify an arbitration award exists in connection with the arbitration proceedings in this matter.

13.     Based on the foregoing, the Award is subject to immediate judicial confirmation and entry of judgment thereon.

**WHEREFORE**, Petitioners, C.P. FERRELL, INC., CHARLES FERRELL, GARY B. LUNDY, LYNN HENNINGS, PATRICIA LEWICK, CHRIS MCGIRT, GEORGE POULLS, CINDY MILLER, BRIAN TAYLOR, KEVIN STANFIELD, MARK WHITE, TED E. WILCOX, ROBERT L. WEITZEL and GIBSON PRYOR, on behalf of themselves and the Settlement Class, respectfully request that this Court enter an Order: (i) granting their Agreed Petition to Confirm Arbitration Award and for Entry of Final Judgment; (ii) confirming the Award, and entering a final judgment consistent therewith; and (iii) awarding such other and further relief as this Honorable Court deems just and proper.

Dated: November 26, 2007

Respectfully submitted,

ZARCO EINHORN SALKOWSKI & BRITO, P.A.
*(Seeking Admission pro hac vice)*
Bank of America Tower
100 S.E. 2nd Street, Suite 2700
Miami, Florida  33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By: _____
      ROBERT ZARCO, ESQ. (RZ-0104)
      ROBERT M. EINHORN, ES Q. (RE-5127)
      HIMANSHU M. PATEL, ESQ. (HP-4833)

- and -

STEVEN A. ROSEN, ESQ. (SR-9913)
501 Fifth Avenue, Suite 804
New York, NY 10017
Telephone: (212) 599-3970
Telecopier: (212) 599-3969

By: _____
      STEVEN A. ROSEN (SR-9913)

.5

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via U. S.

Mail upon:  **John F. Verhey, Esq.**, DLA Piper US LLP, 203 N. LaSalle Street, Suite 1900,

Chicago, Illinois 60601-1293, on this 28th day of November 2007.

By: _____

STEVEN A. ROSEN



BLIMPIE INTERNATIONAL, INC.

WASHINGTON TRADITIONAL LOCATION FRANCHISE AGREEMENT

*between*

BLIMPIE INTERNATIONAL, INC.

*and*

BATV, Inc.

## TABLE OF CONTENTS

| ARTICLE | TITLE | PAGE |
|---|---|---|
| 1 | Franchise Right Granted, Location | 2 |
| 2 | Installation and Commencement of Business | 3 |
| 3 | Training | 3 |
| 4 | Manuals and Standards of Operator Quality, Cleanliness and Service | 4 |
| 5 | Menus, Uniforms, Inspections, Signs | 5 |
| 6 | Advertising and Co-ops | 7 |
| 7 | Company Marks and Additional Marks | 8 |
| 8 | Distribution and Purchase of Equipment, Supplies and Other Products | 9 |
| 9 | Continuing Franchise Fees, Reports, Books, and Records | 11 |
| 10 | Covenant Regarding Other Business Interests | 12 |
| 11 | Interference With Employment Relations | 13 |
| 12 | Subfranchisors, Salesmen | 13 |
| 13 | Local Restaurant Marketing Manual | 13 |
| 14 | Nature of Interest and Transfer | 13 |
| 15 | Term, Default and Termination | 15 |
| 16 | Rights and Obligations Upon Termination | 17 |
| 17 | Insurance | 18 |
| 18 | Sole Obligations of Franchisor | 19 |
| 19 | Point of Sale System, Collection of Data | 19 |
| 20 | Relationship of Parties, Disclosure | 20 |
| 21 | Dispute Resolution: Arbitration and Legal Proceedings | 21 |
| 22 | Execution, Requests Consents and Waivers | 22 |
| 23 | Miscellaneous Provisions | 22 |



# TRADITIONAL LOC/.TI. !! FRANCHISE AGREEMENT

THIS AGREEMENT made this 1ˢᵗ day of ~~May,~~ June, 1999, by and between Blimpie International, Inc., a New Jersey corporation, located at 740 Broadway, 12th Floor, New York, New York 10003 (the "Franchisor"), and BATV, Inc. c/o Blimpie Restaurant located at 5700 100th St., Lakewood, WA 98499 (the "Operator," as also defined in Article 10):

## Definitions.

In this Agreement the following capitalized terms shall have the meanings set forth below, unless the context otherwise requires:

(i)     A Blimpie Branded Product is any product now existing or developed in the future that bears Franchisor's Marks and is sold by some or all Blimpie franchisees or Franchisor or other entities such as supermarkets, grocery stores, convenience stores.

(ii)    A Blimpie Distribution Point or Distribution Point is any system other than a Blimpie Restaurant, where Authorized Blimpie Products using Franchisor's Marks are sold, such as carts, kiosks, Grab'n Go cases, vending machines and any other product distribution systems developed in the future and authorized by Franchisor.

(iii)   A Blimpie Restaurant is a restaurant or other outlet, whether a Traditional Restaurant or a Nontraditional Restaurant, that specializes in the sale of Authorized Blimpie Products, as defined below, is operated under Franchisor's Marks, as defined below, and is authorized by a Franchise or License Agreement made or approved by Franchisor.

(iv)    A Nontraditional Restaurant is a Blimpie Restaurant located within another primary business or in conjunction with other businesses, some of which may be other fast-food type operations. A Nontraditional Blimpie Restaurant will likely be installed within other primary businesses or within a multi-branded facility where other branded or nonbranded restaurants share common space.

(v)     A Traditional Restaurant is a business premises that exists primarily as a Blimpie Restaurant, however, such Traditional Restaurant may also have other types of businesses located in it, but in such case the Blimpie Restaurant is the primary business.

(vi)    A "System Restaurant" is defined as <u>only</u> the operation of a Blimpie Restaurant from which Blimpie Authorized Products are sold for on-premises and off-premises consumption and from which Authorized Blimpie Products may be delivered for off-premises consumption.

(vii)   Authorized Products or Blimpie Authorized Products are defined as products approved or authorized by Franchisor in accordance with Article 5 or 8 of this Agreement.

WHEREAS, Franchisor is a licensee and distributor of the trademark "Blimpie" and "Blimpie Subs & Salads", which have been registered with the United States Patent and Trademark Office of the United States of America and elsewhere, and may, in the future become the owner, licensee and/or authorized distributor for other trademarks, including logos and designs, related or unrelated to Franchisor's Marks (referred to in this Agreement as "Franchisor's Marks");

F98/99 #429    Fourth
Traditional .   WA-036

Initials 

1

## ARTICLE 20. RELATIONSHIP OF PARTIES, DISCLOSURE.

20.1    Franchisor and Operator are not and shall not be considered joint ventures, partners, or agents of each other, or anything other than Franchisor and Operator, and neither shall have the power to bind or obligate the other except specifically as set forth in this Agreement. Franchisor and Operator agree that the relationship created by this Agreement is not a fiduciary relationship. Operator shall not, under any circumstances, act or hold itself out as an agent or representative of Franchisor. Operator agrees to indemnify and hold Franchisor harmless from any claims, demands, liabilities, actions suits or proceedings asserted by third parties arising out of the operation of Operator's System Restaurant or Operator's breach of any of the terms of this Agreement. Franchisor agrees to indemnify and hold Operator harmless from any claims, demands, liabilities, actions suits or proceedings asserted by third parties and arising out of Franchisor's operations, unless caused by Operator.

20.2    As set forth in the UFOC delivered to Operator as described above, Operator acknowledges that Franchisor has entered into certain subfranchise agreements with subfranchisors and/or area developers in certain areas and territories. Pursuant to these contracts, the subfranchisors of Franchisor are obligated to provide certain sales, operational and support services for Franchisor. Operator acknowledges that the relationship between Franchisor and all of its subfranchisors and/or area developers is strictly contractual and that no subfranchisor and/or area developer is an agent of Franchisor. Accordingly, Operator acknowledges and agrees that any past, current or future subfranchisor is not the actual, express or implied agent of Franchisor, and has no power or authority to (i) act on Franchisor's behalf; (ii) enter into or execute any agreement on Franchisor's behalf; (iii) make any representation or promise on Franchisor's behalf; or (iv) bind Franchisor in any way. Unless otherwise specifically agreed to in writing, Franchisor expressly disavows any acts by others, including subfranchisors, that purport to bind Franchisor in any way. Operator agrees to waive any claim or defense in any litigation or arbitration proceeding that a subfranchisor is the express or implied agent of Franchisor. Operator agrees that any attempt to raise, assert or justify such claim or defense in any proceeding constitutes a material default of this Agreement.

## ARTICLE 21. DISPUTE RESOLUTION: ARBITRATION AND LEGAL PROCEEDINGS.

21.1    Franchisor and Operator acknowledge that disputes or disagreements may arise during the term of this Agreement and any renewals thereto. Franchisor and Operator have elected to resolve such disputes or disagreements in a non-judicial alternative dispute resolution format ("ADR"). An ADR format minimizes the expense of dispute resolution and generally can be accomplished in a more expeditious and effective manner. By agreeing to an ADR format, both Operator and Franchisor are also waiving a number of rights, remedies and privileges which may arise in a judicial resolution format. In view, however, of the continuing relationship between Operator and Franchisor over the original and renewal terms of this Agreement, both Operator and Franchisor agree that an ADR format is the most economical, efficient and practical way to resolve disputes and disagreements.

21.2    Accordingly, except as otherwise provided in this Agreement, in the event of any dispute or disagreement between Franchisor and Operator with respect to any issue arising out of or relating to this Agreement, its breach, its interpretation or any other disagreement between Operator and Franchisor, such dispute or disagreement shall be resolved by arbitration. In the event of any dispute, Operator and Franchisor both agree to submit the dispute to arbitration in accordance with the least expensive procedure of the American Arbitration Association ("AAA"), and the application for such arbitration shall be filed in the AAA's New York City office    . Franchisor and Operator agree that the hearing(s) shall be held in the City of New York, State of New York    before one Arbitrator. This paragraph shall not apply to any monetary defaults of Operator including its obligations to pay franchise and advertising fees to Franchisor, and Franchisor shall be free to utilize any right or remedy it may have at law or equity.

INITIALS                 21

21.3   Franchisor and Operator agree that this Agreement evidences a transaction involving interstate commerce and that the enforcement of this arbitration provision and the confirmation of any award issued to either party by reason of an arbitration conducted pursuant to this arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

21.4   Punitive or exemplary damages or attorneys' fees may not be awarded by the arbitrator(s), and any such award shall not be enforceable or enforced in any court. Except as otherwise provided, each party shall bear its own attorneys' fees, expert witness fees and other court or arbitration costs incurred in connection with any legal action or arbitration between Franchisor and Operator. If the waiver of punitive or exemplary damages are in violation of the laws of the state where the Operator's System Restaurant is located, such claims may be awarded by the arbitrator(s), and any such award shall be enforceable or enforced in any court of appropriate jurisdiction. This Agreement shall be strictly construed in the arbitration hearing. In no event can the material provisions of this Agreement including, but not limited to the method of operation, Authorized Product line or monetary obligations specified in this Agreement, amendments to this Agreement or in the Manuals be modified or changed by the arbitrator at the arbitration hearing.

21.5   Except for a proceeding for injunctive relief (including temporary restraining orders, preliminary injunction, injunctions or similar relief which must be brought in an appropriate local forum), any legal proceeding authorized by this Agreement shall be commenced only in the Federal District Court for the Southern District of New York and both Franchisor and Operator consent to the jurisdiction in the Federal District Court for the Southern District of New York. In the event the parties do not meet the jurisdictional requirements for Federal Court, the parties consent to jurisdiction in the Supreme Court, New York County, State of New York. Operator agrees that mailing to its last known address by certified mail of any process shall constitute lawful and valid process. In all cases, Operator and Franchisor each waives any right to a trial by jury. Notwithstanding the foregoing, if the laws of the state where Operator's System Restaurant is located requires jurisdiction of the courts of that state or control by the laws of that state, then this Agreement shall be deemed modified to comply with the applicable laws thereto.

21.6   The terms of this article shall survive termination, expiration or cancellation of this Agreement.

# ARTICLE 22.  EXECUTION, REQUESTS, CONSENTS AND WAIVERS.

22.1   This Agreement takes effect upon its acceptance and execution by Operator and Franchisor, and shall be governed by and construed in accordance with the laws of the State of New York, USA. Franchisor will consider written requests by Operator for Franchisor's consent to a waiver of any obligation imposed by this Agreement. Operator agrees, however, that Franchisor is not required to act uniformly with respect to waivers, requests and consents as each request will be considered on a case by case basis, and nothing shall be construed to require Franchisor to grant any such request. Any waiver granted by Franchisor shall be without prejudice to any other rights Franchisor may have, will be subject to continuing review by Franchisor, and may be revoked, in Franchisor's sole discretion, at any time and for any reason, effective upon ten (10) days prior written notice to Operator. Franchisor makes no warranties or guarantees upon which Operator may rely, and assumes no liability or obligation to Operator by providing any waiver, approval, consent, assistance, or suggestion to Operator in connection with this Agreement, or by reason of any neglect, delay, or denial of any request.

22.2   Unless otherwise provided, whenever this Agreement requires Operator to obtain Franchisor's prior written consent, Operator shall timely address its written request for such consent in triplicate to the parties set forth in paragraph 2 of Article 18 or such other persons as Franchisor may designate in writing. Franchisor will then consider such request and advise Operator of the decision, in writing, within forty-five (45) days. Franchisor's failure to advise Operator will constitute Franchisor's consent to such request. The forty-five (45) day period shall not begin to run, however, until Operator has provided Franchisor with all information and documentation requested by Franchisor. Neither Operator nor Franchisor shall be deemed to have waived or impaired any right, power or option reserved by this Agreement, including, without limitation, its right to demand strict compliance with every term, condition, and covenant herein, or to declare any breach thereof a default and to terminate this Agreement prior to the expiration

INITIALS           22

Inasmuch as Operator and its employees will be incorporating the co-brand within its System Restaurant, all sales of the co-brand shall be included within the definition of "gross sales" as defined in Article 9 herein and Operator shall pay to Franchisor franchise and advertising fees for such sales.

## ARTICLE 24.  WASHINGTON ADDENDUM TO FRANCHISE AGREEMENT.

This Agreement is amended and revised as follows for use in Washington:

24.1  The following paragraphs are added:

If any of the provisions in the franchise offering circular or franchise agreement are inconsistent with the relationship provisions of RCW 19.100.180 or other requirements of the Washington Franchise Investment Protection Act, the provisions of the Act will prevail over the inconsistent provisions of the franchise offering circular and franchise agreement with regard to any franchise sold in Washington.

In any arbitration involving a franchise purchased in Washington, the arbitration site shall be either in Washington or in a place as mutually agreed upon at the time of the arbitration, or as determined by the arbitrator.

A release or waiver of rights executed by franchisee shall not include rights under the Washington Franchise Investment Protection Act except when executed pursuant to a negotiated settlement after the agreement is in effect and where the parties are represented by independent counsel.  Provisions such as those which unreasonably restrict or limit the statute of limitations period for claims under the Act, or rights or remedies under the Act, such as a right to a jury trial, may not be enforceable.

24.2    ARTICLE 14.2 is amended to add the following:

Transfer fees are collectible to the extent that they reflect the franchisor's reasonable estimated or actual cost in effecting the transfer.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

| | |
|---|---|
| _6/9/99_ <br> Date Signed | BLIMPIE INTERNATIONAL, INC. <br><br> By _____ <br> Vice President |
| _6-2-99_ <br> Date Signed | BATV, Inc. <br><br> By _____ <br> Gary Lundy, President |

By execution of this Agreement, the undersigned stockholder(s) of the corporate Operator, or members of the LLC, or the individual Operator hereby personally accepts and agrees to comply with Article 10 of this Agreement and acknowledges that the Franchisor has executed this Agreement in reliance upon the commitments contained in this Paragraph.

_____
Gary Lundy

Initials_____

24

## AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

Case No. 13 114 03098 02

GARY B. LUNDY, CHARLES FERRELL, LYNN HENNINGS,
PATRICIA LEWICK, CHRIS MCGIRT, GEORGE POULLS,
CINDY MILLER, BRIAN TAYLOR, KEVIN STANFIELD,
MARK WHITE, TED E. WILCOX, ROBERT L. WITZEL and
GIBSON PRYOR,

   -against-

BLIMPIE INTERNATIONAL, INC.

### INTERIM PARTIAL FINAL AWARD

Introduction

This arbitration has been pursued as a consolidated proceeding on behalf of 13
named franchisee Claimants against Blimpie, International, Inc., their franchisor,
Respondent. Claimants are franchisees of Respondent's brand of sandwich
shops and seek principally to recover payments from third- party suppliers that
they contend have been wrongfully diverted from a promotional fund for the
benefit of all franchisees and the franchise system. There have been 2 weeks of
vigorously contested hearings at which a considerable amount of live testimony
and voluminous documentary evidence have been presented by both Claimants
and Respondent. The hearings were preceded by extensive pre-hearing
discovery.   Just before the scheduled close of the in person  hearings and prior
to the post- hearing briefing the parties advised that they were in active
negotiations with a view towards settling the arbitration; but  they believed that a
class action settlement was the  most appropriate vehicle for a comprehensive
settlement.

Claimants have filed a Second Amended Complaint setting forth a  class action



claim on behalf of all Blimpie International Inc. franchisees[1], closely followed by a motion seeking: (1) a preliminary approval of a proposed settlement of a class arbitration (premised upon conversion of this proceeding into a class arbitration) (the "Settlement"); (2) certification of a settlement class consisting of all current Blimpie International, Inc. franchisees (the "Settlement Class"); (3) appointment of Claimants' counsel in this proceeding as settlement class counsel and designation of Claimants in this proceeding as the class representatives; and (4) approval of a proposed class notice and scheduling of fairness hearing with respect to the proposed Settlement. The terms of the Settlement are summarized in the proposed class notice which is attached to this Interim Partial Final Award and incorporated herein by reference. Respondent Blimpie International Inc. has advised it joins in the motion solely for purposes of the Settlement in which it does not admit liability or the truth of Claimants' claims.

Under the American Arbitration Association's Supplementary Rules For Class Actions (the "Class Arbitration Rules"), in order to decide this motion the arbitrator must make the following determinations:

1. Whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction ").
2. Whether the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;
3. Whether there are questions of law or fact common to the class;

---

[1] In the Second Amended Complaint Claimants assert 11 causes of action based on a common set of facts. They are: (1) breach of contract; (2) violation of an implied covenant of good faith and fair dealing; (3) violation of Section 2(c) of the Robertson Patman Act; (4) tortious interference with contractual relationships; ((5) breach of third-party beneficiary rights under contract; (6) declaratory relief; (7) declaratory relief and injunctive relief with respect to retaliation; (8) unjust enrichment; (9) violation of various state franchise statutes; (10) Violation of state Deceptive and Unfair Trade Practices Acts and (11) tortious interference with contractual relationships.    Claimants seek the following relief: (1)A disgorgement of all rebates and/or kickbacks that have been paid to Blimpie International by its suppliers back into the Blimpie Brand Building Fund; (2) Attorneys' fees, costs and disbursements as provided by law; and (3) such other and further relief as the Arbitrator may deem just and proper. Claimants through their counsel have stated (orally and in writing) that they are not seeking damages, which would require an individualized determination for each Claimant.

4. Whether the claims or defenses of the representative parties are typical of the claims or defenses of the class;

5. Whether the representative parties will fairly and adequately protect the interests of the class;

6. Whether counsel selected to represent the class will fairly and adequately protect the interests of the class;

7. Whether each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members;

8. Whether the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy;

9. Whether this proceeding should be conducted as mandatory non-opt out class arbitration; and

10. Whether or not to preliminarily approve the proposed settlement and permit submission of the same to the members of the class for an opportunity to be heard there with a view towards final approval of or rejection of, the settlement by the arbitrator.

I. The Applicable Arbitration Clause Permits The Arbitration To Proceed On Behalf Of Or Against A Class.

On April 19, 2005 this arbitrator determined that the applicable arbitration clauses permitted consolidation of the claims of the 13 named Claimants against Respondent. The facts underlying that interim order have not changed (indeed most, if not all, of them have been confirmed by the evidentiary hearings held to date) accordingly, the reasoning of that interim order is also applicable here.

The controlling authority is the United States Supreme Court decision in Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003) (hereinafter "Green Tree").

3

The plurality opinion in *Green Tree* held that(i) where an arbitration agreement governed by the Federal Arbitration Act submits all disputes, claims or controversies, arising from or relating to the agreement to arbitration and (ii) the arbitration provision in the agreement, does not, on its face, forbid a class action arbitration or a consolidation, the question as to whether or not the arbitration may proceed as a class action arbitration or consolidated proceeding is a matter of contract interpretation to be decided by the arbitrator. While the *Green Tree* plurality did not give arbitrators express guidance as to how this contractual interpretation should be handled, it did implicitly provide some guidance (and silently overruled substantial Circuit Court of Appeals precedent) by holding that the fact that the arbitration agreement is between two named parties and speaks in terms of arbitrator(s) chosen by one or both of the parties is not dispositive of whether or not a class arbitration or consolidation was permitted.

I understand *Green Tree* as not establishing a presumption either for or against class action arbitration or consolidation. Rather, the decision prescribes that the analysis is to be done in two stages. First, a determination is to be made as to whether or not the arbitration provision expressly prohibits class action arbitration or consolidation. And, second, if the clause is silent, the arbitrator shall use all generally accepted methods of contractual interpretation to determine the intent of the parties as expressed in their arbitration agreement.

From the presentations by the parties, it appears that the Blimpie franchise agreement was prescribed by Blimpie and evolved over time, but that the essential terms of the various iterations of the arbitration clause remain the same and do not, on their face, expressly forbid class action arbitration or consolidation.[2] The agreements generally refer to a single "Franchisor" or

---

[2] Set out in this footnote is the text of two representative arbitration clauses from the set of franchise agreements in this arbitration.

ARTICLE 21.  DISPUTE RESOLUTION: ARBITRATION AND LEGAL PROCEEDINGS.

21.1    Franchisor and Operator acknowledge that disputes or disagreements may arise

during the term of this Agreement and any renewals thereto. Franchisor and Operator have elected to resolve such disputes or disagreements in a non-judicial alternative dispute resolution format ("ADR"). An ADR format minimizes the expense of dispute resolution and generally can be accomplished in a more expeditious and effective manner. By agreeing to an ADR format, both Operator and Franchisor are also waiving a number of rights, remedies and privileges which may arise in a judicial resolution format. In view, however, of the continuing relationship between Operator and Franchisor over the original and renewal terms of this Agreement, both Operator and Franchisor agree that an ADR format is the more economical, efficient and practical and disagreements.

21.2    **Accordingly, except as otherwise provided in this Agreement, in the event of any dispute or disagreement between Franchisor and Operator with respect to any issue arise out of or relating to this Agreement, its breach, its interpretation or any other disagreement between Operator and Franchisor, such dispute or disagreement shall be resolved by arbitration.**    In the event of any dispute or disagreement, Operator and Franchisor both agree to submit the dispute to the arbitration in accordance with the least expensive procedure of the American Arbitration Association ("AAA"), and the application for such arbitration shall be filed in the AAA's New York City office. Franchisor and Operator agree that the hearing(s) shall be held in the City of New York, State of New York before one Arbitrator. This paragraph shall not apply to any monetary defaults of Operator including its obligations to pay franchise and advertising fees to Franchisor, and Franchisor shall be free to utilize any right or remedy it may have at law or equity.

21.3    Franchisor and Operator agree that this Agreement evidences a transaction involving interstate commerce and that the enforcement of this arbitration provision and the confirmation of any award issued to either party by reason of an arbitration conducted pursuant to this arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

21.4    Punitive or exemplary damages or attorneys' fees may not be awarded by the arbitrator(s), and any such award shall not be enforceable or enforced in any court. Except as otherwise provided, each party shall bear its own attorneys' fees, expert witness fees and other court or arbitration costs incurred in connection with any legal action or arbitration between Franchisor and Operator. If the waiver of punitive or exemplary damages are in violation of the laws of the state where the Operator's System Restaurant is located, such claims may be awarded by the arbitrator(s), and any such award shall be enforceable or enforced in any court of appropriate jurisdiction. This Agreement shall be strictly construed in the arbitration hearing. In no event can the material provisions of this Agreement including, but not limited to the method of operation, Authorized Product line or monetary obligations specified in this Agreement, amendments to this Agreement or in the Manuals be modified or changed by the arbitrator at the arbitration hearing.

21.5    Except for a proceeding for injunctive relief (including temporary restraining orders, preliminary injunction, injunctions or similar relief which must be brought in an appropriate local forum), any legal proceeding authorized by this Agreement shall be commenced only in the Federal District Court for the Southern District of New York and both Franchisor and Operator consent to the jurisdiction in the Federal District Court of the Southern District of New York. In the event the parties do not meet the jurisdictional requirements for Federal Court, the parties consent to jurisdiction in the Supreme Court, New York County, State of New York. Operator agrees that mailing to its last known address by certified mail of any process shall constitute lawful and valid process. In all cases, Operator and Franchisor each waives any right to a trial by jury. Notwithstanding the foregoing, it the laws of the state where Operator's System Restaurant is located requires jurisdiction of the courts of that state or control by the laws of the state, then this Agreement shall be deemed modified to comply with the applicable laws thereto.

21.6    The terms of this article shall survive termination, expiration or cancellation of this Agreement.

18.    ARBITRATION:

In the event LICENSEE has a disagreement with LICENSOR relating to the interpretation of their licensing agreement or relating to any other conflict between the LICENSEE and

5

"Licensor" and a single "Operator" or "Licensee" and are broad in scope and apply to disputes relating to the franchise agreement (other than specifically excluded matters) and any other disputes between the parties. The draftsman clearly evidences knowledge of how to expressly exclude subject matter or restrict the scope of the arbitration as well as how to include procedural requirements.

The arbitration clauses do not expressly prohibit class action arbitration or consolidation.  Most interestingly, the arbitration clauses provide Operator and Franchisor both agree to submit the disputes to arbitration in accordance with the least expensive procedure of the American Arbitration Association ("AAA").  This provision was the fulcrum for April 19, 2005 decision (arrived at after vigorous contest by Respondent) to consolidate the claims of the Claimants in the present proceeding  and is one of the bases for my decision in this motion as well.  It is clear that hearing and determining the claims of all  Blimpie franchisees against the same franchisor pursuant to substantially similar franchise agreements and involving common questions of fact and, essentially common questions of law (since the common law contract and tort claims and Federal antitrust claims predominate over what appear to be essentially duplicative state law provisions) will be less expensive than hearing and determining  these claims in numerous separate arbitrations. Proceeding as a class action is the least expensive procedure particularly in this case where the relief sought is disgorgement of all rebates and/or kickbacks that have been paid to Blimipie International by its suppliers back into the Blimpie Brand Building Fund.

Moreover, to the extent that the nature of the relief being sought in this

LICENSOR, they both agree to submit the dispute to arbitration in accordance with the least expensive procedure of the American Arbitration Association except for violations of paragraphs 8 and/or 19 of the within agreement.   In no event can the method of operation, product line sold or monetary commitments specified herein and in LICENSOR's Operations Manual be modified or changed.   LICENSOR and LICENSEE agree that this agreement evidences a transaction involving interstate commerce and that the enforcement of this arbitration provision and the confirmation of any award issued to either party by reason of an arbitration conducted pursuant to this arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

proceeding does not include payments to individual franchisees and if evaluating the least expensive procedure includes a weighing of the costs of maintaining the individual arbitrations on behalf of each individual member of the class against the amount in hand possibly to be received by each member of the class, joinder of separate arbitrations on behalf of all a class consisting of all Blimpie International Inc. franchisees is financially impracticable

It should be noted also that Claimants have, on their face, stated a claim for relief under the United States antitrust laws (the Robertson Patman Act claim). In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), the Supreme Court made it clear that if an arbitration clause operated as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, it would be condemned as against public policy. 473 U.S. at 637 (Footnote 19)., Given the nature of the relief sought in the predecessor consolidated proceeding and in the Amended Second Complaint, and from the testimony of some of the franchisee witnesses in this proceeding, it is clear to me that absent class action treatment, some franchisees (not presently a party to this proceeding ) would likely find it economically prohibitive to pursue their claim in a separate proceeding. To construe the arbitration provisions in question, as prohibiting a class action and thus, as a practical matter, foreclosing some franchisees access to any forum to hear their statutory claims would require the arbitration provisions to be condemned as violative of public policy . Such a result would be inconsistent with the parties' choice of arbitration.

It also appears from Respondent's joining in the motion for class action treatment that it implicitly recognizes, for purposes of settlement, that the economies offered by a class action that avoids a series of successive arbitration proceedings by individuals or groups of franchisees, where success by any one of such claimant(s) could result in an award with collateral estopple effects. This also, weighs in favor of construing the arbitration clauses as permitting a class action. Accordingly, for the reasons set forth above I conclude that the

arbitration clauses in the Blimpie International franchise agreements permits this arbitration to proceed as a class action.

## II. The Class Is So Numerous That Joinder of Separate Arbitrations On Behalf Of All Members Is Impracticable.

The proposed class here exceeds 1,500 franchisees and they are scattered throughout the United States. While not necessarily controlling precedent under the Class Arbitration Rules, decisions under Fed. R. Civ. Pr. 23 (a)(1) are quite persuasive. See e.g. *Town of New Castle.* v. *Yonkers Contracting Co.* 131 F.R.D. 38, 40-41 (S.D.N.Y. 1990) and *Moore's Federal Practice - Civil 23.22,* and cases cited therein, to the effect that numbers in excess of 100 or 1,000 satisfy the requirement of a minimum number of class members necessary for a determination to permit a class action proceeding.    The precise composition of the class can be determined from Respondent's records. Moreover, to the extent that the nature of the relief being sought in this proceeding does not include payments to individual franchisees and if practicality includes a weighing of the costs of maintaining the individual arbitrations on behalf of each individual member of the class against the amount in hand possibly to be received by each member of the class, joinder of separate arbitrations on behalf of all a class consisting of all Blimpie International Inc. .franchisees is financially impracticable.

## III. There Are Questions Of Law Or Fact Common To The Class; and
## IV. The Claims Or Defenses Of The Representative Parties Are Typical Of The Claims Or Defenses Of The Class.

Based both upon the claims asserted and the evidence presented at the hearings, the claims of all of the franchisees are the same and arise from the same set of operative facts. Claimants allege that Blimpie breached its obligations under franchise agreements by (i) entering into "secret" agreements with a limited number of suppliers who provided undisclosed rebates and/or

payments to Blimpie based upon the amount of purchases made by Claimants
and (ii) that  Blimpie  both  required the franchisees to purchase supplies from
such suppliers under the terms of the franchise agreements and retained such
payments rather than paying such monies into the Blimpie Brand Building Fund .
Claimants assert that Blimpie was obligated to expend such monies for the
benefit of franchisees and the franchise system on advertising and other
promotional activities.  There simply are no individual issues that exist separately
from the common factual and legal issues underlying the class action claims  and
which are the same claims the current Claimants are asserting and were
asserting in their consolidated arbitration proceeding.  Accordingly, based upon
the foregoing as well as the testimony and documents presented to me at the
hearings, I find that there are questions of law or fact common to the proposed
class.  I further find that since the claims of the Representative Parties are the
same as the claims of all of the members of the   designated class, they are also
typical of the claims or defenses of the class.

V. The Representative Parties Will Fairly  And Adequately Protect The Interests
Of The Class; and
VI. Counsel Selected To Represent The Class Will Fairly And Adequately
Protect The Interests Of The Class.

Claimants assert in their motion papers that the representative Claimants do not
have any conflicting interests with the other Class Members because all of the
members' claims are the same and no separate and distinct interests exist which
are possessed by the Class Members and not possessed by the representative
Claimants. I agree. Moreover, at the evidentiary hearings this arbitrator had the
opportunity to hear and observe the testimony of a number of the representative
Claimants and while I was not privy to their confidential communications with
counsel outside of the hearing room, it was clear to me that these Claimants
were not passive bystanders and were more than adequately in control of the
case and have sufficient  financial resources to prosecute the class action to

conclusion.

Additionally, because of its unique procedural history, this proceedingt is not one where the determination of the arbitrator with respect to adequacy of counsel must be made on reputation or prediction of future conduct. Both during the motion practice preceding the hearing, and during the hearing itself I have had ample opportunity to observe Claimants' counsel's written submissions and counsel in action presenting testimony and documentary evidence both on direct examination and on cross examination as well as presentation of oral argument. I find that (a) Claimants as representatives of the Class and (b) counsel selected by Claimants will fairly and adequately represent the interests of the Class consisting of all Blimpie International Inc. franchisees with respect to the claims asserted in the Second Amended Complaint.

VII. Each Class Member Has entered Into An Agreement Containing An Arbitration Clause Which Is Substantially Similar To That Signed By The Class Representative(s) And Each Of The Other Class Members.

As discussed under I above, this has been established to my satisfaction by evidence presented at the hearings.

VIII.    The Questions Of Law Or Fact Common To The Members Of The Class Predominate Over Any Questions Affecting Only Individual Members, And That A Class Arbitration Is Superior To Other Available Methods For The Fair and Efficient Adjudication Of The Controversy.

As discussed under II and IV above there are no individual issues that exist separately from the common factual and legal issues underlying the class action claims . Under the circumstances of this case, the efficiencies of a class action discussed above are so compelling that a class arbitration is clearly superior to other available methods i.e., joinder of separate arbitrations on behalf of each member of the class, for the fair and efficient adjudication of the controversy.

Multiple arbitration proceedings brought by class members on an individual basis could potentially result in inconsistent adjudications and significantly greater financial and time burdens for all parties.

Indeed as discussed below in IX because of the nature of the relief sought the arbitration properly should be maintained as a class action where class members should not be able to request exclusion from the proceeding. There are no difficulties that are likely to be encountered in management of this class arbitration, particularly since class action status is being sought with a view towards settlement.

## IX.    This Proceeding Should Be Certified As A Mandatory Non-Opt Out Class Action.

This proceeding should be certified as a mandatory non-opt out class action because individual proceedings could produce inconsistent adjudications which could result in different standards of conduct for the franchisor with respect to different franchisees. The nature of the relief being sought, payment of money by Respondent into the Blimpie Brand Building Fund and not individual franchisee damages, also weighs in favor of not permitting class members to opt out of the proceeding. Further, prosecution of separate actions would create a risk of several adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests. See *Ortiz* v. *Fireboard Corp* ,527, U.S. 815, 833 (1999).This could manifest itself through awards which exhaust available funds prior to determination of the claims of franchisees whose claims are adjudicated later in time ( in the case of individualized claims) or which otherwise preclude an award requiring payment into the Blimpie Brand Building Fund. It should be noted that when appropriate notice and opportunity have been provided to class members, preclusion of the opt out right in a settlement class action

11

does not violate due process. *American Employers' Insurance Co.* v. *King Resources Co.,* 20 Fed Rules Ser. 2d 61, 163-6 (D. Colo. 1975).

An additional consideration arises from the fact that a component of Claimants claim is that the complained of diversion of resources resulted in less funding for advertising and promotion of the brand which injured Claimants. This appears to be the type of claim in which could be extremely difficult and/ or costly to establish individualized damages. Accordingly, seeking a collective remedy such as is the case in this proceeding appears to be a more appropriate .

X. Th e Proposed Settlement Should Be Preliminarily Approved and Submitted To The Members Of The Class For An Opportunity To Be Heard Thereon.

The proposed Settlement has been presented to this arbitrator for preliminary review. Preliminarily and without the benefit of a hearing on the merits of the proposed Settlement and subject to a subsequent showing to the contrary, the proposed Settlement appears to me:

1. to be the product of serious informed, non collusive negotiations;
2. to have no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class;
3. not to provide excessive compensation to Class counsel.

Accordingly, it merits notice to the class and an opportunity for them to be heard. ***This arbitrator reserves ultimate decision and determination of whether or not the Settlement is fair, reasonable and adequate pending completion of the notice to class members and the opportunity of all interested parties to be heard thereon and to object or support the proposed settlement, as the case may be, which will take place as set forth in the decretal portion of the award below.***

## INTERIM PARTIAL FINAL AWARD

I, the undersigned arbitrator, duly appointed in accordance with the arbitration agreements, contained in the several franchise agreements between the Claimants and respondent, after having considered the testimony, evidence and contentions of the parties, for the reasons set forth above, do hereby determine, award and order as follows:

1. Subject to the provisions of paragraph 8  below, this proceeding shall be converted into and continue as a class arbitration for purposes of pursuing the approval of the  settlement summarized in the form of proposed Notice to the Settlement Class which is Exhibit A to this Interim Partial Final Award and incorporated herein by this reference; and

2. Subject to the provisions of paragraph 8  below, the Settlement Class be all individuals or entities that are currently parties to an existing franchise agreement with of Blimpie  International, Inc. throughout the United States of America none of whom shall have the right to opt out of this arbitration proceeding.

3. Subject to the provisions of paragraph 8  below, the named Claimants in this proceeding, Gary  B. Lundy, CharlesFerrell, Lynn Hennings,Ptricia Lewick,Chris McGirt, George Poulls, Cindy Miller, Brian Taylor, Kevin Stanfield, Mark White, Ted E. Wilcox, Robert L. Witzel and Gibson Pryor shall constitute the Settlement Class Representatives.

4. Subject to the provisions of paragraph 8  below,  counsel for the Claimants in this proceeding, the law firm of  Zarco Einhorm Salkowski & Brito of Miami Florida be designated Settlement Class Counsel.

5. That it is the most economical (both in efforts and costs to the parties) procedure and thus consistent with the mandate of the arbitration agreements between the members of the Settlement Class and

13

Respondent, Blimpie International, Inc. and in the best interest of the Settlement Class and Respondent if (i) the stay of proceedings to permit any party to move a court of competent jurisdiction to confirm or vacate the Class Determination Award prescribed by Rule 5 of the Class Arbitration Rules and (ii) the notice to be provided to class members of a proposed settlement or compromise and (iii) the opportunity to be heard in opposition thereto prescribed by Rule 8 of the Class Arbitration Rules be combined into one notice and stay period of 45 days from the date the Notice is deposited into the United States Mail as set forth in this award.

6. That there be a hearing on the fairness of the proposed Settlement, at which hearing evidence may be presented by all or any members of the Settlement Class and Respondent in support of and in opposition to the Settlement and that such hearing be held as set forth in the form of Notice of Propose Cass Settlement, attached to this award as Exhibit A.

7. The form and substance of the Notice of Proposed Class Settlement attached hereto as Exhibit A is approved and the parties are directed to cause the same to be sent at the expense of Respondent, Blimpie International, Inc. to all individuals or entities that are currently parties to an existing franchise agreement with Blimpie International, Inc. in the United States of America, by deposit into the United States Mail, postage paid, addressed to each such franchisee at the most current address for such franchisees on the records of Respondent and/or if otherwise known to the parties also to such other address .

8. If the Settlement is not approved by the arbitrator after the fairness hearing or if it is approved but the final award of the arbitrator is not confirmed by a court of competent jurisdiction, the Settlement will terminate and be null and void and the arbitrator will vacate the conditional certification of the Settlement Class, appointment of the Settlement Class Representatives and Settlement Class Counsel and

the arbitration proceeding will proceed as though the Settlement Class had never been certified and the appointments had not been made.

9. Subject to a contrary determination by a court of competent jurisdiction, the arbitrator retains jurisdiction of this dispute and this arbitration proceeding.

10. The proceedings in this arbitration are stayed for a period of 45 days from the date the Notice is deposited into the United States Mail as set forth in this award to permit any party or member of the class to move a court of competent jurisdiction to confirm or vacate this Interim Partial Final Award.

Date: _Avril 24, 2007_

Michael D. Friedman, Arbitrator

I, Michael D. Friedman, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument which is my Interim Partial Final Award.

Dated _Avril 26, 2007_

Michael D. Friedman

## EXHIBIT A

## AMERICAN ARBITRATION ASSOCIATION
## NEW YORK, NEW YORK

C. P. FERRELL, INC., *et al.*,

      Claimants,

    vs.                      Case No. 13 114 03098 02

BLIMPIE INTERNATIONAL, INC.,

      Respondent.

_____/

## NOTICE OF PROPOSED CLASS SETTLEMENT

### TO: All Blimpie franchisees

**PLEASE NOTE: ALL FRANCHISEES OF BLIMPIE INTERNATIONAL, INC. ARE INCLUDED WITHIN THIS SETTLEMENT. THIS SETTLEMENT CONSISTS OF A MANDATORY NON-OPT-OUT CLASS.**

**THIS IS NOT A NOTICE OF A LAWSUIT AGAINST YOU. YOU MAY BENEFIT FROM READING THIS NOTICE, AND YOUR RIGHTS MAY BE AFFECTED BY THIS PROPOSED CLASS ACTION SETTLEMENT.**

## I.    INTRODUCTION

This notice is to inform you of a proposed settlement of an arbitration proceeding entitled: *C. P. Ferrell, Inc., et al. v. Blimpie International, Inc.* ("Action"), Case No. 13 114 03098 02, brought by twelve franchisees of the Respondent, Blimpie International, Inc. ("Blimpie"), on behalf of all Blimpie franchisees. Those twelve franchisees, hereafter referred to as "Claimants," are the following: Gary B. Lundy, Cindy Miller, Lynn Hennings, Patricia Lewick, Chris McGirt, Kevin Stanfield, Ted E. Wilcox, Robert L. Weitzel, Gibson Pryor, Brian Taylor, George Poullos and Mark White. This Action, which is pending before the American Arbitration Association in New York City, New York, pertains to all individuals and/or entities

that are parties to an existing franchise agreement with Blimpie whether or not they currently operate a Blimpie restaurant under a franchise agreement.

## II.    BACKGROUND

In September 2002, the Association of Blimpie Franchisees, Inc. ("ABF"), an organization of which many of the Claimants are or were members, filed this action for damages and equitable relief arising out of Blimpie's alleged wrongful conduct in diverting monies that the ABF contended belonged to the Blimpie Brand Building Fund ("BBBF").  Thereafter, Claimants, on behalf of themselves and all similarly situated Blimpie franchisees, substituted for the ABF and filed an amended class complaint, which has since been superseded by a Second Amended Complaint ("Complaint").  In that Complaint, Claimants alleged that in or about January 2002 an investor group led by a Blimpie subfranchisor, Jeffrey Endervelt, purchased a controlling interest in Blimpie and took over its ownership and operations.  The Complaint further alleges that subsequent to the purchase, Blimpie entered into agreements with several suppliers from whom franchisees, such as Claimants, are obligated to purchase their products under which the suppliers agreed to charge pre-determined prices to Blimpie franchisees for the purchase of the provisions in exchange for being designated as approved suppliers to the Blimpie system.  The Complaint alleges that these suppliers also agreed to provide certain upfront payments to Blimpie in addition to payments made by the suppliers to the BBBF based on the amount of purchases made by Blimpie franchisees.  The Complaint further alleges that rather than depositing these upfront payments from suppliers into the BBBF, Blimpie utilized these monies for other corporate purposes.  Claimants allege that as a result of this practice, the cost of provisions to Blimpie franchisees from these suppliers has increased, while the quality has decreased.  Claimants also alleged that Blimpie utilized BBBF funds for corporate purposes

other than marketing and promotion of the Blimpie brand. Finally, Claimants allege that as a result of Blimpie's conduct, they, along with the Class Members, have suffered damages.

Blimpie has denied that it had any obligation to deposit payments or rebates from suppliers into the BBBF, denied that the supplier payments and rebates had any impact on the cost or quality of provisions to Blimpie franchisees, denied that it utilized funds from the BBBF for purposes other than marketing and promotion of the Blimpie system, and denied the other material allegations of the Complaint.

Claimants and Blimpie, through their respective counsel, have aggressively litigated this action, engaging in extensive document exchanges. Claimants also took numerous depositions of Blimpie's current and former directors, officers and employees. An evidentiary hearing was held on November 7-10 and 13-17, 2006. Prior to the conclusion of the evidentiary hearing and prior to any decision by the Arbitrator on the merits of the claims, the parties reached a settlement of their dispute, the terms of which are described below.

Approximately one year ago, and following the conclusion of written and oral discovery, the parties began engaging in extensive settlement discussions. Those discussions eventually reached an impasse, only to be revived again in early November 2006 just prior to the commencement of the evidentiary hearing. The arms'-length negotiations in this case were protracted and highly contentious, both via the telephone and in-person. The parties continued to engage in settlement discussions throughout the two-week evidentiary hearing that eventually led to the Settlement. By agreeing to settle the dispute, Blimpie is not admitting that it has done anything wrong. As a result of the proposed Settlement, the Arbitrator has (1) determined that this Action should proceed as a class action for purposes of settlement only, with the Claimants as Settlement Class Representatives, and (2) granted preliminary approval of the Settlement,

3

subject to a fairness hearing to be held at the law offices of DLA Piper US LLP, 1251 Avenue of the Americas, New York City, New York 10020-1104, before Arbitrator Michael D. Friedman, Esq., of the law firm of Shiboleth, Yisraeli, Roberts & Zisman, L.L.P., 1 Penn Plaza, Suite 2527, New York City, NY 10118-6001. At that hearing, the Arbitrator will consider if the proposed Settlement is fair, reasonable and adequate. You do not need to attend the Fairness Hearing unless you wish to object and have filed a timely objection, as described in more detail below.

This Notice of Proposed Class Settlement is to advise you as a member of the Settlement Class ("Settlement Class Member") of the filing and status of the Action and of your rights with respect to a proposed settlement of Claimants' and the Settlement Class Members' claims in this Action. Because Claimants seek certification of a mandatory non-opt class, you do not have any rights to be excluded from the Settlement Class. However, all Settlement Class Members, either individually or through counsel, have the right to appear before Arbitrator Michael D. Friedman and object to the Settlement at the Fairness Hearing, provided that you file written objections with the American Arbitration Association, 990 Warren Avenue, East Providence, RI 02914, Attn.: Ms. Karen Fontaine for transmittal to Arbitrator Friedman by the Objection Date of June 15, 2007 and serve such objections on Settlement Class Counsel and Blimpie's counsel by June 20, 2007.

## III.    THE SETTLEMENT AGREEMENT

The key terms of the Settlement reached between the parties are as follows:

### A.    Settlement Class

The Settlement Class consists of all individuals or entities that are currently parties to an existing franchise agreement with Blimpie throughout the United States.

**B.    Benefits Of Settlement**

The Settlement provides for the following benefits to the Settlement Class Members:  (i) Blimpie has reaffirmed that it will abide by the vendor approval process set forth in the franchise agreements; (ii) Blimpie has reaffirmed that it will administer the BBBF according to the BBBF's by-laws; (iii) Blimpie has agreed to pay the sum of $437,500, payable in monthly installments of $12,500 each, to the BBBF commencing upon the conclusion of the confirmation of the Settlement until such amount is paid in full; and (iv) Blimpie has reaffirmed the grant of the certificates of membership to the groups known as the National Franchisee Advisory Council ("NFAC") and the Area Representative Advisory Council ("ARAC") pursuant to Article 9 of the BBBF by-laws.

In exchange for the concessions made by Blimpie, the Class Members agree to release Blimpie and its officers/representatives, including Jeffery Endervelt, from any and all claims related to vendor payments or improper expenditures from the BBBF.

**C.    Class Notice And Settlement Administration**

Blimpie has agreed to pay for all mailing costs associated with providing notice to the Settlement Class Members.  These amounts do not reduce the monies to be paid to the BBBF by Blimpie under the Settlement or the other benefits available to Settlement Class Members and are in addition to and separate from all other consideration and benefits available to Settlement Class Members.

The Notice shall be disseminated by direct mail to all Settlement Class Members.

### D.    Attorneys' Fees And Expenses

Subject to the Arbitrator's approval, Blimpie has agreed to pay the sum of $350,000 towards Claimants' attorneys' fees in these proceedings. The attorneys' fees will be paid upon conclusion of the confirmation process.

This amount does not reduce the monies to be paid to the BBBF by Blimpie under the Settlement or the other benefits available to Settlement Class Members and is in addition to and separate from the other consideration and benefits available to the Settlement Class Members. Class Counsel has agreed not to seek any attorneys' fees, expenses and/or costs in addition to or in excess of this amount.

### E.    Reimbursement Of Expenses For Settlement Class Representatives

Blimpie has agreed to pay the sum of $87,500 towards the reimbursement of Claimants' out-of-pocket expenses incurred in these proceedings. This sum will be paid to Claimants upon conclusion of the confirmation process.

This amount does not reduce the monies to be paid to the BBBF by Blimpie under the Settlement or the other benefits available to Settlement Class Members and is in addition to and separate from the other consideration and benefits available to the Settlement Class Members. Claimants have agreed not to seek or accept any amount in excess of the sum of $87,500 that they are entitled to under the Settlement.

## IV.    REASONS FOR THE SETTLEMENT

This Action has been pending for over four years, and Settlement Class Counsel have investigated the facts underlying the Action for this entire time period through both formal and informal discovery. Settlement Class Counsel have also considered the defenses available to Blimpie and reviewed the law relating to the allegations in the Action.

In addition, approximately one year ago, following the conclusion of written and oral discovery, the parties engaged in extensive settlement discussions. Those discussions eventually reached an impasse, only to be revived again this year prior to the commencement of the evidentiary hearing. The arms'-length negotiations in this case were protracted and highly contentious, both via the telephone and in-person. The parties continued to engage in settlement discussions throughout the two-week evidentiary hearing that eventually led to the Settlement finally resolving the claims.

Claimants' Class Counsel believes that the terms of the Settlement are fair, adequate and in the best interests of the Settlement Class. Claimants' Class Counsel reached this conclusion after investigating and considering, among other things, the strengths and weaknesses of the Settlement Class Members' claims against Blimpie, the uncertainties inherent in this complex proceeding and the benefits provided to Settlement Class Members.

This Class Notice does not indicate any expression or opinion by Arbitrator Friedman concerning the merits of the respective claims or defenses asserted in the Action. This Notice is sent merely to advise you of the Settlement and of your rights in connection thereto.

## V.    RELEASES

Upon entry of the Final Award of the Arbitrator confirming the Settlement, Blimpie and its affiliates, and their respective past and present shareholders, officers (including Jeffrey Endervelt), directors, employees, agents, servants, attorneys and legal representatives, parents, subsidiaries, predecessors, successors and assigns, heirs, executors, administrators, subrogees, insurers and/or insureds (the "Released Parties") shall be released by the Claimants and each Settlement Class Member and any Person claiming by or through them/him/her/it as their/his/her/its spouse, heir, associate, co-owner, attorney, agent, administrator, devisee,

predecessor, successor, assignee, trustee, representative of any kind, shareholder, partner, director, employee or affiliate (the "Releasing Parties") from any and all manner of action or actions, cause or causes of action, suits, debts, dues, accounts, sums of money, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, non-competition agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, including attorneys' fees, costs and interests, that the Releasing Party has, or may in the past have had, or may in the future have, that is, has been, could reasonably have been or in the future might reasonably be asserted, either in the Action or in any other arbitration or court proceeding against any of the Released Parties arising out of or in any way relating to (1) Blimpie's receipt of payments, rebates or other consideration from vendors or suppliers to the Blimpie franchise system or (2) the propriety of expenditures from the BBBF ("Settled Claims").

## VI.    LIMITS OF CONSIDERATION AND BENEFITS

The benefits and consideration to Claimants, the Settlement Class and Claimants' Class Counsel are exclusively set forth herein and in the Settlement, and Blimpie shall have no further obligations in connection with the Settlement or the Action.

## VII.    DENIAL OF LIABILITY

By entering into the Settlement, Blimpie does not admit any wrongdoing or liability and vigorously denies Claimants' and the Settlement Class Members' allegations. The Settlement is a compromise of disputed claims and does not mean that Blimpie is liable for any of the claims or causes of action asserted by the Class Representatives. The terms of the Settlement are of public record and are not confidential.

## VIII.  RIGHTS OF SETTLEMENT CLASS MEMBERS

All Settlement Class Members to whom this Notice is directed, either individually or through counsel, have the right to appear before Arbitrator Michael D. Friedman and object to the Settlement.  However, in order to object, you must file and serve a written objection as detailed below.  Objections must be filed with the American Arbitration Association for transmittal to Arbitrator Friedman by the Objection Date of June 15, 2007 at the following address:  American Arbitration Association, 990 Warren Avenue, East Providence, RI 02914, Attn.: Ms. Karen Fontaine.  A copy of any objection must also be mailed to Class Counsel, the law firm of ZARCO EINHORN SALKOWSKI & BRITO, P.A., Attn:  Robert Zarco, Esq., Bank of America Tower, 100 S.E. 2nd Street, Suite 2700, Miami, Florida 33131, and to John F. Verhey, DLA Piper US LLP, 203 North LaSalle Street, 19th Floor, Chicago, Illinois 60601, postmarked by midnight on the Objection Date of June 20, 2007.  To obtain additional information about the law firm of ZARCO EINHORN SALKOWSKI & BRITO, P.A., please visit www.zarcolaw.com.

The objection must include: (i) the date(s) of, and parties to, any franchise agreements under which you are claiming membership in the Settlement Class, (ii) a statement of each objection asserted; (iii) a detailed description of the facts underlying each objection; (iv) a detailed description of the legal authorities supporting each objection; (v) a statement of whether the objector intends to appear and argue at the Fairness Hearing and, if so, how long the objector anticipates needing to present the objection; and (vi) a list of the exhibits which the objector may offer during the Fairing Hearing, along with copies of such exhibits.

Any Settlement Class Member who does not make and serve their written objection in the manner prescribed above will be deemed to have waived any objections.

## IX.    THE FAIRNESS HEARING

The Arbitrator has given his preliminary approval to the Settlement, has conditionally certified the Settlement Class, and has approved appointment of the Settlement Class Representatives and Settlement Class Counsel. The Arbitrator will hold a hearing at the law offices of DLA Piper US LLP, 1251 Avenue of the Americas, New York City, New York 10020-1104, on August 7, 2007 at 10:00 a.m. New York City time to determine whether, as recommended by the Settlement Class Representatives and Settlement Class Counsel, he should confirm final certification of the Settlement Class, give final approval to the Settlement, grant the Settlement Class Counsel's application for attorneys' fees and litigation expenses, approve reimbursement of expenses for the Settlement Class Representatives, and make such other rulings incident thereto as are provided in Settlement Agreement, including, but not limited to, entering a Final Award of Arbitrator, which will dismiss with prejudice all of the Settlement Class Members' Settled Claims against the Released Parties.

Attendance at the hearing is not necessary; however, any Settlement Class Member wishing to be heard orally in opposition to the Settlement must indicate this intention in his or her written objection, as explained above.   Settlement Class Members who support the Settlement do not need to appear at the Fairness Hearing or take any other action to indicate their approval.

## X.    FURTHER PROCEEDINGS

If the Settlement is approved, you do not need to take any action as the settlement payments will be deposited into the BBBF, in accordance with the terms of the Settlement.

If the Settlement is not approved or if it is approved but Final Award of the Arbitrator is not confirmed by a court of competent jurisdiction, the Settlement will terminate and be null and

void and the Arbitrator will vacate the conditional certification of the Settlement Class, appointment of the Settlement Class Representatives and Settlement Class Counsel, and the Action will proceed as though the Settlement Class had never been certified and the appointments had not been made.

## XI    ADDITIONAL INFORMATION

Any questions that you may have about the matters in this Class Notice should be directed in writing to Settlement Class Counsel at ZARCO EINHORN SALKOWSKI & BRITO, P.A., Attn: Robert Zarco, Esq., Bank of America Tower, 100 S.E. 2nd Street, Suite 2700, Miami, FL 33131.    You may also receive information by writing Blimpie c/o Kahala Corp., Attn: Melissa Rothring, Esq., 7730 East Greenway Road, Suite 104, Scottsdale, Arizona 85260, or by email at mkrothring@kahalacorp.com.

BY ARBITRATOR

s/Michael D. Friedman

Dated:  April 30, 2007

**AMERICAN ARBITRATION ASSOCIATION**
Commercial Arbitration Tribunal

---

Case No. 13 114 03098 02

GARY B. LUNDY, CHARLES FERRELL, LYNN HENNINGS,
PATRICIA LEWICK, CHRIS MCGIRT, GEORGE POULLS,
CINDY MILLER, BRIAN TAYLOR, KEVIN STANFIELD,
MARK WHITE, TED E. WILCOX, ROBERT L. WITZEL and
GIBSON PRYOR,

     -against-

BLIMPIE INTERNATIONAL, INC.

---

## FINAL CONSENT AWARD

### I.    INTRODUCTION

On April 30, 2007, I entered an Interim Partial Final Award (incorporated herein by reference) ("Interim Award") in this matter pursuant to which a non-opt-out settlement class of Blimpie franchisees was certified, the proposed class settlement between Claimants and Respondent Blimpie International, Inc. ("Blimpie") was preliminarily approved, and the parties were directed to send notice of the proposed class settlement to all class members to give them an opportunity to raise objections and be heard thereon.  Pursuant to the Interim Award, I reserved the ultimate decision and determination as to whether the settlement between the parties was fair, reasonable and adequate pending completion of the notice to class members and the fairness hearing.

On Tuesday, August 7, 2007, a Fairness Hearing took place at the law firm of DLA Piper US LLP, 1251 Avenue of the Americas, New York City, New York 10020-1104 before the undersigned. The purpose of the Fairness Hearing was to determine if



EXHIBIT
"**C**"

the settlement reached between Claimants and Blimpie was fair, reasonable and adequate. No written objections to the settlement were filed, nor did any class members appear at the Fairness Hearing to object to the settlement. Although no objections to the settlement have been asserted, I have independently assessed the fairness, adequacy and reasonableness of the settlement. Having done so, I have determined that it is in the best interests of the class to approve the settlement for the reasons discussed below.

## II.    NOTICE TO CLASS MEMBERS

As stated in the Affidavit of Valencia Engermann dated August 30, 2007, the Notice of the Proposed Class Settlement ("Notice"), previously approved by me in the Interim Award, was sent by regular mail to all individuals or entities that are currently parties to an existing franchise agreement with Blimpie and that currently or formerly operated one or more Blimpie restaurants.[1]  I find that such Notice sufficiently apprised the class members of the terms of the settlement and of the opportunity to file written objections to the settlement and to attend the fairness hearing to be heard on any such objections.

---

[1]     As indicated in Ms. Engermann's Affidavit, the Blimpie franchisees who executed one or more franchise agreements but who never actually opened a restaurant were not sent a copy of the Notice, in part because address information for those franchisees is not current or complete. While these franchisees were originally included within the definition of the class certified in the Interim Award, I find that they should be excluded from the class definition for purposes of this Final Consent Award. I note that exclusion of franchisees who never operated Blimpie restaurants from the class does not affect the fairness of the settlement, inasmuch as those franchisees would not have made purchases from participating suppliers who contributed to the Blimpie Brand Building Fund ("BBBF"), nor would these franchisees have been in a position to benefit from the BBBF expenditures. As a result, they would likely not have standing to raise the claims asserted in this case. The parties have represented to me that the putative class members in the CRB Enterprises arbitration referred to in decretal paragraph 11 of this award below are all class members in this arbitration proceeding.

2

III.    **APPROVAL OF SETTLEMENT**

To approve a class action settlement, the settlement agreement must be "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Guiliani*, 218 F.3d 132, 138-39 (2nd Cir. 2000). Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005) (*citing D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2nd Cir. 2001)). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Id.* (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)).

In the Interim Award, I previously found that the proposed settlement appeared to be the product of serious, informed and non-collusive negotiations, had no obvious deficiencies, did not improperly grant preferential treatment to class representatives or segments of the class, and did not provide excessive compensation to the law firm of Zarco Einhorn Salkowski & Brito, P.A. ("Class Counsel").

A.    **The *Grinnell* Factors.** In evaluating the adequacy of a settlement agreement, the factors enunciated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 338, 463 (2nd Cir. 1974), are to be considered. The so-called *Grinnell* factors are as follows: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463.

Here, the *Grinnell* factors weigh overwhelmingly in favor of class settlement. First, "most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2nd Cir. 2001). As noted in the Interim Award, the parties have already engaged in two weeks of vigorously contested hearings at which a considerable amount of live testimony and voluminous documentary evidence was presented. Because the parties did not complete the arbitration hearing, the costs of continued hearings, post-hearing briefing and other post-hearing matters would be substantial and could quickly outweigh any additional recovery that could potentially be achieved.

Second, the reaction of the class members to the settlement has been overwhelmingly favorable. Of the settlement class that consisted of almost 1,000 franchisees throughout the United States, not a single franchisee filed a written objection or appeared in person at the Fairness Hearing to object to the settlement. In addition, Hess Oil, a franchisee with over 250 units and the obvious incentive to object to the settlement given the disproportionate amount of the benefit it stands to derive, likewise did not object to the settlement. Thus, the settlement meets with the approval of the parties and class members without any noted exception.[2]

---

[2] Significantly, the Notice specifically advised that "Settlement Class Members who support the Settlement do not need to appear at the Fairness Hearing or to take any other action to indicate their approval." Notice, p. 10.

The third (3rd) *Grinnell* factor looks to the stage of the proceedings and the amount of discovery completed.    Here, the parties engaged in extensive written discovery and Claimants also conducted numerous depositions of Blimpie's current and former directors, officers and employees.    In addition, there were two weeks of vigorously contested hearings at which a considerable amount of live testimony and voluminous documentary evidence were presented by both sides.    The parties clearly undertook a comprehensive factual investigation and presented sufficient evidence of their respective claims and defenses during the hearings to afford the Arbitrator the opportunity to "'intelligently [] make ... an appraisal' of the Settlement." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2nd Cir. 1982)).

The fourth (4th) and fifth (5th) *Grinnell* factors require the Arbitrator to consider the risks of establishing liability and damages.    The Arbitrator is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14, 67 L.Ed.2d 59, 101 S.Ct. 993 (1981), or to "foresee with absolute certainty the outcome of the case." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177.    Rather, the Arbitrator "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *Id.* (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)).

Claimants introduced evidence at the hearing to support their interpretation of the franchise agreements and other relevant documents, including the fact that virtually all vendor payments were deposited into the BBBF prior to 2002.    Claimants also presented evidence supporting their theory of recovery under the Robinson-Patman Act,

including testimony that the vendor payments were not made in exchange for services rendered by Blimpie to the vendors. In turn, Blimpie presented evidence to support its interpretation of the franchise agreements as not requiring all vendor monies to be deposited into the BBBF. Blimpie also raised a number of potentially viable defenses to the Robinson-Patman Act claims, including that there was no agency relationship between itself and Claimants, that the payments were not secret, that Claimants suffered no antitrust injury, that the payments were in return for services rendered, and that Claimants were foreclosed under the Second Circuit's decision in *Blue Tree Hotels Inv. Ltd. v. Starwood Hotels and Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004), from recovering under the Robinson-Patman Act because the relief sought by Claimants was to have the vendor payments deposited into the BBBF. In short, significant issues and uncertainties remained as to the ultimate outcome of the case. As such, settlement at this stage permits the class members to achieve a certain, if modest, recovery and to benefit from the BBBF in the future.

The sixth (6th) *Grinnell* factor considers the risk of maintaining class action status through trial. Although class certification has been approved for the purpose of settlement, it is not certain that the case would be certified in the absence of a settlement. If settlement were disapproved, it is virtually certain that Blimpie would challenge the class certification, inasmuch as Blimpie challenged the joinder of the Claimants in this case prior to settlement and certification. While the Claimants might indeed prevail on the certification issue, the risk that the case might be not certified is not illusory and weighs in favor of settlement.

The seventh (7th) factor to be weighed is the ability of Blimpie to withstand a greater judgment. Given the evidence presented at the hearing as to the difficulties and closures experienced in the Blimpie franchise system over the last few years, it remains questionable as to whether Blimpie could bear a judgment significantly greater than the amount involved here. Thus, this factor weighs in favor of settlement.

The final two factors -- the range of reasonableness of the settlement fund in light of the best possible recovery (eighth factor) and in light of the attendant risks of litigation (ninth factor) -- weigh in favor of the settlement. The determination whether a settlement is reasonable does not involve the use of a "'mathematical equation yielding a particularized sum.'" *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 (quoting *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Instead, "there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir.), *cert. denied*, 409 U.S. 1039, 34 L.Ed.2d 488, 93 S.Ct. 521 (1972). While the settlement does not fund the BBBF to anywhere near the full extent of the vendor payments at issue, it does ensure that a considerable amount of money will be deposited into the BBBF over time to fund marketing and advertising initiatives. The settlement in this proceeding represents a reasonable compromise between the strengths of Claimants' case and the possible success of Blimpie's defenses as noted above. This compromise reasonably balances the damages potentially recoverable by Claimants with the risks of establishing liability and damages and also takes into account the Respondent's potential inability to

7

withstand a significantly greater judgment.

On this record, I find that the *Grinnell* factors weigh in favor of the proposed settlement and that it represents a reasonable compromise resulting from the conscientious and skilled negotiations of counsel for both parties.

**B.    Reimbursement Of Expenses For Settlement Class Representatives.**

The settlement also provides for Blimpie to pay the sum of $87,500.00 towards the reimbursement of the Class Representatives' out-of-pocket expenses. Because this amount does not reduce the monies to be paid into the BBBF or the other benefits available to the settlement class and is in addition to and separate from the other consideration and benefits to the settlement class members, I find that the reimbursement of the Class Representatives' out-of-pocket expenses is reasonable. The Class Representatives have been funding this proceeding for a period in excess of four (4) years for the benefit of the entire class.  Given the significant out-of-pocket expenses associated with the discovery depositions held across the country in this case and the two (2) weeks of arbitration hearings in New York City, this modest reimbursement amount, to be paid to and distributed among the Class Representatives, is fair, reasonable and justifiable.

**C.    Attorneys' Fees.** The settlement also provides for an award of attorneys' of $350,000.00, which is separate and apart from the amount of monies that Blimpie has agreed to deposit into the BBBF and represents forty percent (40%) of the total value of the $875,000.00 settlement. *See Boeing Co v. Van Gemert*, 444 U.S. 472, 48081, 62 L.Ed.2d 676, 100 S.Ct. 745 (1980) (appropriateness of attorneys' fees should be measured against total value of settlement fund created).

8

Awards of attorneys' fees in class settlements are generally calculated through the use of one of two methods: the "Lodestar" method, or the "Percentage of the Award" method. The trend in the Second Circuit "is toward the percentage method . . . which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.'" *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (*quoting In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. 2002)). Under the percentage method, the court awards counsel a percentage of the total award received by the plaintiffs. To calculate the percentage, the court considers the effort expended and risks undertaken by plaintiffs' counsel and the results of those efforts, including the value of the benefits obtained for the class. *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003) ("percentage used in calculating any given fee award must follow a sliding scale and must bear an inverse relationship to the amount of the settlement").

Regardless of which method is utilized, the reasonableness of the attorneys' fees is ultimately determined by evaluating the six factors articulated by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2nd Cir. 2000). These factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (internal quotations omitted).

Application of the above factors demonstrates that the entire amount of attorneys' fees requested by Claimants' counsel is reasonable under the circumstances. Class Counsel has represented Claimants in these proceedings since the middle of

2002 and has aggressively litigated this action, engaging in extensive document exchanges and discovery and dispositive motion practice. Numerous depositions were taken of Blimpie's current and former officers, directors and employees. Class Counsel also represented Claimants during the final hearings held during the period from November 7-10 and 13-16, 2006. Moreover, Class Counsel itself funded a significant portion of the costs involved in these proceedings. Had it not been for such funding, it is possible that Claimants would have been economically prohibited from pursuing their claims.

The magnitude and complexity of the case further counsels in favor of the requested attorneys' fees award, since this case involves unique issues relating to franchise law and also involves somewhat novel claims under the Robinson-Patman Act. Moreover, the risks of litigation in this matter were significant at the time counsel agreed to represent the class. Claimants' success remains uncertain if the settlement is not approved. As discussed above, if this case had not been resolved, Claimants faced the hurdle of having to first establish class certification and then liability and damages. Accordingly, these risks undercut the certainty of ultimate recovery and weigh in favor of the requested fee award.

Finally, Class Counsel was experienced and well-qualified to conduct this litigation. Class Counsel demonstrated knowledge and familiarity with the unique franchise law issues present in this case. *Xianglin Shi v. SINA Corp.*, U.S. Dist. LEXIS 13176, *9 (S.D.N.Y. 2005). The fee requested by Class Counsel here is certainly reasonable when viewed in relation to the complexity of the work and the experience and reputation of counsel. Additionally, both during the motion practice preceding the

final hearing and during the hearing itself, I had ample opportunity to observe Class Counsel's written submissions and conduct in presenting testimony and documentary evidence both on direct examination and on cross-examination, as well as the presentation of oral argument. Based on my observations, I previously determined in the Interim Award that Class Counsel would fairly and adequately represent the interests of the class with respect to the claims asserted in the Second Amended Complaint.

Additionally, due to the relatively modest settlement involved here, the requested fee award is necessary to compensate counsel adequately. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (court awarded attorneys' fees in amount of 40% of settlement proceeds); *In re Independent Energy Holdings PLC*, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003) (percentage of attorneys' fee award is inversely related to the amount of the settlement). Similarly, public policy favors such an award. Were it not for this class action, it is unlikely that many of the class members would have ever had the opportunity to pursue their claims on an individual basis. In addition, if I were to deny an award of fees sufficient to compensate counsel for at least a substantial portion of the work they have performed, no attorneys – these or others – would likely be willing to take on future potentially meritorious but small-scale class actions such as this case.

For these reasons, I find that the requested attorneys' fees are fair and reasonable. The law firm of Zarco, Einhorn, Salkowski & Brito, P.A. shall be awarded attorneys' fees in the requested amount of $350,000.00.

## FINAL CONSENT AWARD – DECRETALS

I, the undersigned Arbitrator, duly appointed in accordance with the arbitration agreements contained in the several franchise agreements between the Claimants and Respondent, after having considered the testimony, evidence and contentions of the parties, for the reasons set forth above, and pursuant to the settlement agreement entered into between the parties, do hereby determine, award and order as follows:

1.      Subject to the provisions of paragraph 12 below, this proceeding has been converted into and shall continue as a settlement class arbitration for purposes of confirmation of this Final Consent Award by a court of competent jurisdiction.

2.      Subject to the provisions of paragraph 12 below, the Settlement Class shall consist of all individuals or entities that are currently parties to an existing franchise agreement with Blimpie International, Inc. (or its assignee) and that currently or formerly operated one or more Blimpie restaurants in the United States, none of whom shall have the right to opt out of this arbitration proceeding.

3.      Subject to the provisions of paragraph 12 below, the named Claimants in this proceeding, Gary B. Lundy, Charles Ferrell, Lynn Hennings, Patricia Lewick, Chris McGirt, George Poullos, Cindy Miller, Brian Taylor, Kevin Stanfield, Mark White, Ted E, Wilcox, Robert L. Wetzel and Gibson Pryor, shall constitute the Settlement Class Representatives.

4.      Subject to the provisions of paragraph 12 below, counsel for the Claimants in this proceeding, the law firm of Zarco, Einhorn, Salkowski & Brito of Miami, Florida shall be designated as Class Counsel.

12

5.    The Notice of Proposed Class Settlement mailed to Class Members on May 8-9, 2007 sufficiently apprised the Class Members of the terms of the settlement and of the opportunity to object to the settlement and to attend the fairness hearing to assert any such objections.

6.    The Settlement Agreement is fair, adequate and reasonable, and not the product of collusion, and also satisfies the factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 338 (2nd Cir. 1974). In addition, the amounts provided for in the Settlement Agreement for reimbursement of Class Representatives' out-of-pocket expenses and Class Counsel's attorneys' fees are fair and reasonable.

7.    Subject to the provisions of paragraph 12 below, Respondent shall pay the sum of $437,500.00 to the Blimpie Brand Building Fund in monthly installments of $12,500.00 each, commencing upon confirmation of this Final Consent Award by a court of competent jurisdiction.

8.    Subject to the provisions of paragraph 12 below, Respondent shall pay to Settlement Class Counsel the sum of $350,000.00 as attorneys' fees upon confirmation of this Final Consent Award by a court of competent jurisdiction.

9.    Subject to the provisions of paragraph 12 below, Respondent shall pay the sum of $87,500.00 to the "Zarco, Einhorn, Salkowski & Brito P.A. Trust Account" for disbursement to Class Representatives to cover reimbursement of Class Representatives' out-of-pocket expenses upon confirmation of this Final Consent Award by a court of competent jurisdiction.

10.    Effective upon confirmation of the Final Consent Award by a court of competent jurisdiction, Claimants and each Settlement Class Member and any person

claiming by or through them/or/him/her/it as their/his/her/its spouse, heir, associate, co-owner, attorney, agent, administrator, designee, predecessor, successor, assignee, trustee, representative of any kind, shareholder, partner, director, employee or affiliate (the "Releasing Parties") shall release Blimpie International, Inc. and its affiliates, and their respective past and present shareholders, officers (including Jeffrey Endervelt), directors, employees, agents, servants, attorneys and legal representatives, parents, subsidiaries, predecessors, successors, assigns (including Kahala Corp., KBI Holdings, LLC and their affiliated entities), heirs, executors, administrators, subrogees, insurers and/or insureds (the "Released Parties") from any and all manner of action or actions, cause or causes of action, suits, debts, dues, accounts, sums of money, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, non-competition agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, including attorneys' fees, costs and interest, that any Releasing Party has asserted in this Arbitration or that any Releasing Party has, or may in the past have had, or may in the future have, that is, has been, could reasonably been, or in the future might reasonably be asserted, either in this Arbitration or in any other arbitration or court proceeding against any of the Released Parties arising out of or relating in any way to (a) Respondent's receipt of payments, rebates or other consideration from vendors or suppliers to the Blimpie franchise system or (b) the proprietary of expenditures from the Blimpie Brand Building Fund.

     11.    Upon confirmation of the Final Consent Award by a court of competent jurisdiction, the claims in the pending arbitration entitled *CRB Enterprises, et al. and*

*Blimpie International, Inc.*, Case No. 11 114 00886 06, currently pending before the American Arbitration Association as a putative class arbitration, shall be dismissed with prejudice.

12.    If the Final Consent Award is not confirmed by a court of competent jurisdiction, the settlement will terminate and be null and void and the Arbitrator will vacate the conditional certification of the Settlement Class, the appointment of Settlement Class Representatives and Settlement Class Counsel, and the arbitration will proceed as though the Settlement Class had never been certified and the appointments had not been made.

The administrative fees of the American Arbitration Association totaling $3,250.00, and the compensation and expenses of the arbitrator totaling $57,224.50 shall be borne equally by the parties.

Dated: November 7 2007        _____
                                Michael D. Friedman, Arbitrator


I, Michael D. Friedman, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument which is my Final Consent Award.

Dated: November 7, 2007        _____
                                Michael D. Friedman, Arbitrator