**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

C.P. FERRELL, INC., CHARLES FERRELL,
GARY B. LUNDY, LYNN HENNINGS,
PATRICIA LEWICK, CHRIS MCGIRT,
GEORGE POULLS, CINDY MILLER,
BRIAN TAYLOR, KEVIN STANFIELD,
MARK WHITE, TED E. WILCOX,
ROBERT L. WEITZEL and GIBSON PRYOR

                Petitioners,

    -against-

BLIMPIE INTERNATIONAL, INC.,

           Respondent.

---------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-11-07

Civil Action No: 07-CV-10666

**ORDER ON AGREED PETITION**
**TO CONFIRM ARBITRATION**
**AWARD AND FINAL JUDGMENT**

    **THIS CAUSE** came before the Court on Petitioners' Agreed Petition to Confirm Arbitration Award and for Entry of Final Judgment. The Court, having considered the Agreed Petition and being otherwise fully advised in the premises, it is hereby

    **ORDERED AND ADJUDGED** that Petitioners' Agreed Petition to Confirm Arbitration Award and for Entry of Final Judgment is hereby **GRANTED**. The Court hereby enters a final judgment in favor of Petitioners and the entire Class consisting of all individuals or entities that are currently parties to an existing franchise agreement with Respondent and that currently or formerly operated one or more Blimpie restaurants in the United States and against Respondent, Blimpie International, Inc., in the total amount of Eight Hundred Seventy-Five Thousand Dollars ($875,000.00) as reflected in the attached Final Consent Award (annexed hereto as Exhibit "A"),

1

for all of which let execution issue.  The Court retains jurisdiction to enforce the terms of this

Final Judgment.

DONE AND ORDERED in Chambers at New York City, New York on this 10th day

of December 2007.

_____

THE HONORABLE JED S. RAKOFF

cc:      All counsel of record

2

## AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

Case No. 13 114 03098 02

GARY B. LUNDY, CHARLES FERRELL, LYNN HENNINGS,
PATRICIA LEWICK, CHRIS MCGIRT, GEORGE POULLS,
CINDY MILLER, BRIAN TAYLOR, KEVIN STANFIELD,
MARK WHITE, TED E. WILCOX, ROBERT L. WITZEL and
GIBSON PRYOR,

   -against-

BLIMPIE INTERNATIONAL, INC.

## FINAL CONSENT AWARD

### I.    INTRODUCTION

On April 30, 2007, I entered an Interim Partial Final Award (incorporated herein by reference) ("Interim Award") in this matter pursuant to which a non-opt-out settlement class of Blimpie franchisees was certified, the proposed class settlement between Claimants and Respondent Blimpie International, Inc. ("Blimpie") was preliminarily approved, and the parties were directed to send notice of the proposed class settlement to all class members to give them an opportunity to raise objections and be heard thereon.    Pursuant to the Interim Award, I reserved the ultimate decision and determination as to whether the settlement between the parties was fair, reasonable and adequate pending completion of the notice to class members and the fairness hearing.

On Tuesday, August 7, 2007, a Fairness Hearing took place at the law firm of DLA Piper US LLP, 1251 Avenue of the Americas, New York City, New York 10020-1104 before the undersigned. The purpose of the Fairness Hearing was to determine if

the settlement reached between Claimants and Blimpie was fair, reasonable and adequate. No written objections to the settlement were filed, nor did any class members appear at the Fairness Hearing to object to the settlement. Although no objections to the settlement have been asserted, I have independently assessed the fairness, adequacy and reasonableness of the settlement. Having done so, I have determined that it is in the best interests of the class to approve the settlement for the reasons discussed below.

## II.    NOTICE TO CLASS MEMBERS

As stated in the Affidavit of Valencia Engermann dated August 30, 2007, the Notice of the Proposed Class Settlement ("Notice"), previously approved by me in the Interim Award, was sent by regular mail to all individuals or entities that are currently parties to an existing franchise agreement with Blimpie and that currently or formerly operated one or more Blimpie restaurants.[1] I find that such Notice sufficiently apprised the class members of the terms of the settlement and of the opportunity to file written objections to the settlement and to attend the fairness hearing to be heard on any such objections.

---

[1]    As indicated in Ms. Engermann's Affidavit, the Blimpie franchisees who executed one or more franchise agreements but who never actually opened a restaurant were not sent a copy of the Notice, in part because address information for those franchisees is not current or complete. While these franchisees were originally included within the definition of the class certified in the Interim Award, I find that they should be excluded from the class definition for purposes of this Final Consent Award. I note that exclusion of franchisees who never operated Blimpie restaurants from the class does not affect the fairness of the settlement, inasmuch as those franchisees would not have made purchases from participating suppliers who contributed to the Blimpie Brand Building Fund ("BBBF"), nor would these franchisees have been in a position to benefit from the BBBF expenditures. As a result, they would likely not have standing to raise the claims asserted in this case. The parties have represented to me that the putative class members in the CRB Enterprises arbitration referred to in decretal paragraph 11 of this award below are all class members in this arbitration proceeding.

### III.   APPROVAL OF SETTLEMENT

To approve a class action settlement, the settlement agreement must be "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Guiliani*, 218 F.3d 132, 138-39 (2nd Cir. 2000). Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005) (*citing D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2nd Cir. 2001)). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Id.* (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)).

In the Interim Award, I previously found that the proposed settlement appeared to be the product of serious, informed and non-collusive negotiations, had no obvious deficiencies, did not improperly grant preferential treatment to class representatives or segments of the class, and did not provide excessive compensation to the law firm of Zarco Einhorn Salkowski & Brito, P.A. ("Class Counsel").

**A.     The *Grinnell* Factors.**   In evaluating the adequacy of a settlement agreement, the factors enunciated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 338, 463 (2nd Cir. 1974), are to be considered. The so-called *Grinnell* factors are as follows: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

3

reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463.

Here, the *Grinnell* factors weigh overwhelmingly in favor of class settlement. First, "most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2nd Cir. 2001). As noted in the Interim Award, the parties have already engaged in two weeks of vigorously contested hearings at which a considerable amount of live testimony and voluminous documentary evidence was presented. Because the parties did not complete the arbitration hearing, the costs of continued hearings, post-hearing briefing and other post-hearing matters would be substantial and could quickly outweigh any additional recovery that could potentially be achieved.

Second, the reaction of the class members to the settlement has been overwhelmingly favorable. Of the settlement class that consisted of almost 1,000 franchisees throughout the United States, not a single franchisee filed a written objection or appeared in person at the Fairness Hearing to object to the settlement. In addition, Hess Oil, a franchisee with over 250 units and the obvious incentive to object to the settlement given the disproportionate amount of the benefit it stands to derive, likewise did not object to the settlement. Thus, the settlement meets with the approval of the parties and class members without any noted exception.[2]

---

[2] Significantly, the Notice specifically advised that "Settlement Class Members who support the Settlement do not need to appear at the Fairness Hearing or to take any other action to indicate their approval." Notice, p. 10.

4

The third (3rd) *Grinnell* factor looks to the stage of the proceedings and the amount of discovery completed. Here, the parties engaged in extensive written discovery and Claimants also conducted numerous depositions of Blimpie's current and former directors, officers and employees. In addition, there were two weeks of vigorously contested hearings at which a considerable amount of live testimony and voluminous documentary evidence were presented by both sides. The parties clearly undertook a comprehensive factual investigation and presented sufficient evidence of their respective claims and defenses during the hearings to afford the Arbitrator the opportunity to "'intelligently [] make ... an appraisal' of the Settlement." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2nd Cir. 1982)).

The fourth (4th) and fifth (5th) *Grinnell* factors require the Arbitrator to consider the risks of establishing liability and damages. The Arbitrator is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14, 67 L.Ed.2d 59, 101 S.Ct. 993 (1981), or to "foresee with absolute certainty the outcome of the case." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177. Rather, the Arbitrator "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *Id.* (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)).

Claimants introduced evidence at the hearing to support their interpretation of the franchise agreements and other relevant documents, including the fact that virtually all vendor payments were deposited into the BBBF prior to 2002. Claimants also presented evidence supporting their theory of recovery under the Robinson-Patman Act,

5

including testimony that the vendor payments were not made in exchange for services rendered by Blimpie to the vendors. In turn, Blimpie presented evidence to support its interpretation of the franchise agreements as not requiring all vendor monies to be deposited into the BBBF. Blimpie also raised a number of potentially viable defenses to the Robinson-Patman Act claims, including that there was no agency relationship between itself and Claimants, that the payments were not secret, that Claimants suffered no antitrust injury, that the payments were in return for services rendered, and that Claimants were foreclosed under the Second Circuit's decision in *Blue Tree Hotels Inv. Ltd. v. Starwood Hotels and Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004), from recovering under the Robinson-Patman Act because the relief sought by Claimants was to have the vendor payments deposited into the BBBF. In short, significant issues and uncertainties remained as to the ultimate outcome of the case. As such, settlement at this stage permits the class members to achieve a certain, if modest, recovery and to benefit from the BBBF in the future.

The sixth (6th) *Grinnell* factor considers the risk of maintaining class action status through trial. Although class certification has been approved for the purpose of settlement, it is not certain that the case would be certified in the absence of a settlement. If settlement were disapproved, it is virtually certain that Blimpie would challenge the class certification, inasmuch as Blimpie challenged the joinder of the Claimants in this case prior to settlement and certification. While the Claimants might indeed prevail on the certification issue, the risk that the case might be not certified is not illusory and weighs in favor of settlement.

6

The seventh (7th) factor to be weighed is the ability of Blimpie to withstand a greater judgment. Given the evidence presented at the hearing as to the difficulties and closures experienced in the Blimpie franchise system over the last few years, it remains questionable as to whether Blimpie could bear a judgment significantly greater than the amount involved here. Thus, this factor weighs in favor of settlement.

The final two factors -- the range of reasonableness of the settlement fund in light of the best possible recovery (eighth factor) and in light of the attendant risks of litigation (ninth factor) -- weigh in favor of the settlement. The determination whether a settlement is reasonable does not involve the use of a "'mathematical equation yielding a particularized sum.'" *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 (quoting *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Instead, "there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir.), *cert. denied*, 409 U.S. 1039, 34 L.Ed.2d 488, 93 S.Ct. 521 (1972). While the settlement does not fund the BBBF to anywhere near the full extent of the vendor payments at issue, it does ensure that a considerable amount of money will be deposited into the BBBF over time to fund marketing and advertising initiatives. The settlement in this proceeding represents a reasonable compromise between the strengths of Claimants' case and the possible success of Blimpie's defenses as noted above. This compromise reasonably balances the damages potentially recoverable by Claimants with the risks of establishing liability and damages and also takes into account the Respondent's potential inability to

7

withstand a significantly greater judgment.

On this record, I find that the *Grinnell* factors weigh in favor of the proposed settlement and that it represents a reasonable compromise resulting from the conscientious and skilled negotiations of counsel for both parties.

**B.**   **Reimbursement Of Expenses For Settlement Class Representatives.**

The settlement also provides for Blimpie to pay the sum of $87,500.00 towards the reimbursement of the Class Representatives' out-of-pocket expenses. Because this amount does not reduce the monies to be paid into the BBBF or the other benefits available to the settlement class and is in addition to and separate from the other consideration and benefits to the settlement class members, I find that the reimbursement of the Class Representatives' out-of-pocket expenses is reasonable. The Class Representatives have been funding this proceeding for a period in excess of four (4) years for the benefit of the entire class. Given the significant out-of-pocket expenses associated with the discovery depositions held across the country in this case and the two (2) weeks of arbitration hearings in New York City, this modest reimbursement amount, to be paid to and distributed among the Class Representatives, is fair, reasonable and justifiable.

**C.**   **Attorneys' Fees.** The settlement also provides for an award of attorneys' of $350,000.00, which is separate and apart from the amount of monies that Blimpie has agreed to deposit into the BBBF and represents forty percent (40%) of the total value of the $875,000.00 settlement. *See Boeing Co v. Van Gemert*, 444 U.S. 472, 48081, 62 L.Ed.2d 676, 100 S.Ct. 745 (1980) (appropriateness of attorneys' fees should be measured against total value of settlement fund created).

8

Awards of attorneys' fees in class settlements are generally calculated through the use of one of two methods: the "Lodestar" method, or the "Percentage of the Award" method. The trend in the Second Circuit "is toward the percentage method . . . which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.'" *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (*quoting In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. 2002)). Under the percentage method, the court awards counsel a percentage of the total award received by the plaintiffs. To calculate the percentage, the court considers the effort expended and risks undertaken by plaintiffs' counsel and the results of those efforts, including the value of the benefits obtained for the class. *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003) ("percentage used in calculating any given fee award must follow a sliding scale and must bear an inverse relationship to the amount of the settlement").

Regardless of which method is utilized, the reasonableness of the attorneys' fees is ultimately determined by evaluating the six factors articulated by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2nd Cir. 2000). These factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (internal quotations omitted).

Application of the above factors demonstrates that the entire amount of attorneys' fees requested by Claimants' counsel is reasonable under the circumstances. Class Counsel has represented Claimants in these proceedings since the middle of

9

2002 and has aggressively litigated this action, engaging in extensive document exchanges and discovery and dispositive motion practice. Numerous depositions were taken of Blimpie's current and former officers, directors and employees. Class Counsel also represented Claimants during the final hearings held during the period from November 7-10 and 13-16, 2006. Moreover, Class Counsel itself funded a significant portion of the costs involved in these proceedings. Had it not been for such funding, it is possible that Claimants would have been economically prohibited from pursuing their claims.

The magnitude and complexity of the case further counsels in favor of the requested attorneys' fees award, since this case involves unique issues relating to franchise law and also involves somewhat novel claims under the Robinson-Patman Act. Moreover, the risks of litigation in this matter were significant at the time counsel agreed to represent the class. Claimants' success remains uncertain if the settlement is not approved. As discussed above, if this case had not been resolved, Claimants faced the hurdle of having to first establish class certification and then liability and damages. Accordingly, these risks undercut the certainty of ultimate recovery and weigh in favor of the requested fee award.

Finally, Class Counsel was experienced and well-qualified to conduct this litigation. Class Counsel demonstrated knowledge and familiarity with the unique franchise law issues present in this case. *Xianglin Shi v. SINA Corp.*, U.S. Dist. LEXIS 13176, *9 (S.D.N.Y. 2005). The fee requested by Class Counsel here is certainly reasonable when viewed in relation to the complexity of the work and the experience and reputation of counsel. Additionally, both during the motion practice preceding the

final hearing and during the hearing itself, I had ample opportunity to observe Class Counsel's written submissions and conduct in presenting testimony and documentary evidence both on direct examination and on cross-examination, as well as the presentation of oral argument. Based on my observations, I previously determined in the Interim Award that Class Counsel would fairly and adequately represent the interests of the class with respect to the claims asserted in the Second Amended Complaint.

Additionally, due to the relatively modest settlement involved here, the requested fee award is necessary to compensate counsel adequately. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (court awarded attorneys' fees in amount of 40% of settlement proceeds); *In re Independent Energy Holdings PLC*, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003) (percentage of attorneys' fee award is inversely related to the amount of the settlement). Similarly, public policy favors such an award. Were it not for this class action, it is unlikely that many of the class members would have ever had the opportunity to pursue their claims on an individual basis. In addition, if I were to deny an award of fees sufficient to compensate counsel for at least a substantial portion of the work they have performed, no attorneys – these or others – would likely be willing to take on future potentially meritorious but small-scale class actions such as this case.

For these reasons, I find that the requested attorneys' fees are fair and reasonable. The law firm of Zarco, Einhorn, Salkowski & Brito, P.A. shall be awarded attorneys' fees in the requested amount of $350,000.00.

11

## FINAL CONSENT AWARD – DECRETALS

I, the undersigned Arbitrator, duly appointed in accordance with the arbitration agreements contained in the several franchise agreements between the Claimants and Respondent, after having considered the testimony, evidence and contentions of the parties, for the reasons set forth above, and pursuant to the settlement agreement entered into between the parties, do hereby determine, award and order as follows:

1.    Subject to the provisions of paragraph 12 below, this proceeding has been converted into and shall continue as a settlement class arbitration for purposes of confirmation of this Final Consent Award by a court of competent jurisdiction.

2.    Subject to the provisions of paragraph 12 below, the Settlement Class shall consist of all individuals or entities that are currently parties to an existing franchise agreement with Blimpie International, Inc. (or its assignee) and that currently or formerly operated one or more Blimpie restaurants in the United States, none of whom shall have the right to opt out of this arbitration proceeding.

3.    Subject to the provisions of paragraph 12 below, the named Claimants in this proceeding, Gary B. Lundy, Charles Ferrell, Lynn Hennings, Patricia Lewick, Chris McGirt, George Poullos, Cindy Miller, Brian Taylor, Kevin Stanfield, Mark White, Ted E. Wilcox, Robert L. Wetzel and Gibson Pryor, shall constitute the Settlement Class Representatives.

4.    Subject to the provisions of paragraph 12 below, counsel for the Claimants in this proceeding, the law firm of Zarco, Einhorn, Salkowski & Brito of Miami, Florida shall be designated as Class Counsel.

12

5.     The Notice of Proposed Class Settlement mailed to Class Members on May 8-9, 2007 sufficiently apprised the Class Members of the terms of the settlement and of the opportunity to object to the settlement and to attend the fairness hearing to assert any such objections.

6.     The Settlement Agreement is fair, adequate and reasonable, and not the product of collusion, and also satisfies the factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 338 (2nd Cir. 1974). In addition, the amounts provided for in the Settlement Agreement for reimbursement of Class Representatives' out-of-pocket expenses and Class Counsel's attorneys' fees are fair and reasonable.

7.     Subject to the provisions of paragraph 12 below, Respondent shall pay the sum of $437,500.00 to the Blimpie Brand Building Fund in monthly installments of $12,500.00 each, commencing upon confirmation of this Final Consent Award by a court of competent jurisdiction.

8.     Subject to the provisions of paragraph 12 below, Respondent shall pay to Settlement Class Counsel the sum of $350,000.00 as attorneys' fees upon confirmation of this Final Consent Award by a court of competent jurisdiction.

9.     Subject to the provisions of paragraph 12 below, Respondent shall pay the sum of $87,500.00 to the "Zarco, Einhorn, Salkowski & Brito P.A. Trust Account" for disbursement to Class Representatives to cover reimbursement of Class Representatives' out-of-pocket expenses upon confirmation of this Final Consent Award by a court of competent jurisdiction.

10.    Effective upon confirmation of the Final Consent Award by a court of competent jurisdiction, Claimants and each Settlement Class Member and any person

13

claiming by or through them/or/him/her/it as their/his/her/its spouse, heir, associate, co-owner, attorney, agent, administrator, designee, predecessor, successor, assignee, trustee, representative of any kind, shareholder, partner, director, employee or affiliate (the "Releasing Parties") shall release Blimpie International, Inc. and its affiliates, and their respective past and present shareholders, officers (including Jeffrey Endervelt), directors, employees, agents, servants, attorneys and legal representatives, parents, subsidiaries, predecessors, successors, assigns (including Kahala Corp., KBI Holdings, LLC and their affiliated entities), heirs, executors, administrators, subrogees, insurers and/or insureds (the "Released Parties") from any and all manner of action or actions, cause or causes of action, suits, debts, dues, accounts, sums of money, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, non-competition agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, including attorneys' fees, costs and interest, that any Releasing Party has asserted in this Arbitration or that any Releasing Party has, or may in the past have had, or may in the future have, that is, has been, could reasonably been, or in the future might reasonably be asserted, either in this Arbitration or in any other arbitration or court proceeding against any of the Released Parties arising out of or relating in any way to (a) Respondent's receipt of payments, rebates or other consideration from vendors or suppliers to the Blimpie franchise system or (b) the proprietary of expenditures from the Blimpie Brand Building Fund.

11.    Upon confirmation of the Final Consent Award by a court of competent jurisdiction, the claims in the pending arbitration entitled *CRB Enterprises, et al. and*

14

*Blimpie International, Inc.*, Case No. 11 114 00886 06, currently pending before the American Arbitration Association as a putative class arbitration, shall be dismissed with prejudice.

12.     If the Final Consent Award is not confirmed by a court of competent jurisdiction, the settlement will terminate and be null and void and the Arbitrator will vacate the conditional certification of the Settlement Class, the appointment of Settlement Class Representatives and Settlement Class Counsel, and the arbitration will proceed as though the Settlement Class had never been certified and the appointments had not been made.

The administrative fees of the American Arbitration Association totaling $3,250.00, and the compensation and expenses of the arbitrator totaling $57,224.50 shall be borne equally by the parties.

Dated: November 7 2007

Michael D. Friedman, Arbitrator

I, Michael D. Friedman, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument which is my Final Consent Award.

Dated: November 7, 2007

Michael D. Friedman, Arbitrator

15

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

Date:

In Re:

-v-

Case #: (          )

Dear Litigant,

Enclosed is a copy of the judgment entered in your case.

Your attention is directed to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, which requires that if you wish to appeal the judgment in your case, you must file a notice of appeal within 30 days of the date of entry of the judgment (60 days if the United States or an officer or agency of the United States is a party).

If you wish to appeal the judgment but for any reason you are unable to file your notice of appeal within the required time, you may make a motion for an extension of time in accordance with the provision of Fed. R. App. P. 4(a)(5). That rule requires you to show "excusable neglect" or "good cause" for your failure to file your notice of appeal within the time allowed. Any such motion must first be served upon the other parties and then filed with the Pro Se Office no later than 60 days from the date of entry of the judgment (90 days if the United States or an officer or agency of the United States is a party).

The enclosed Forms 1, 2 and 3 cover some common situations, and you may choose to use one of them if appropriate to your circumstances.

$450.00

The Filing fee for a notice of appeal is $5.00 and the appellate docketing fee is $250.00 payable to the "Clerk of the Court, USDC, SDNY" by certified check, money order or cash. **No personal checks are accepted.**

J. Michael McMahon, Clerk of Court

by: _____

, Deputy Clerk

APPEAL FORMS
Docket Support Unit

Revised: March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

------------------------------------------------X
                                    |
                                    |            **NOTICE OF APPEAL**
                                    |
        -V-                         |
                                    |            civ.            (    )
                                    |
                                    |
------------------------------------------------X

        Notice is hereby given that _____
                                             (party)
hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment [describe it]

entered in this action on the _____ day of _____ , _____ .
                                (day)                (month)              (year)

                                          _____
                                                (Signature)

                                          _____
                                                (Address)

                                          _____
                                         (City, State and Zip Code)

Date: _____        (      ) _____-_____
                                                        (Telephone Number)

**Note:** You may use this form to take an appeal provided that it is <u>received</u> by the office of the Clerk of the District Court within 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

<u>FORM 1</u>

<u>APPEAL FORMS</u>
Docket Support Unit                                                    Revised:  March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

```
----------------------------------------------------X
                                           |
                                           |          MOTION FOR EXTENSION OF TIME
                                           |          TO FILE A NOTICE OF APPEAL
                                           |
              -V-                          |
                                           |            civ.          (    )
                                           |
                                           |
----------------------------------------------------X
```

Pursuant to Fed. R. App. P. 4(a)(5), _____ respectfully
                                                        (party)

requests leave to file the within notice of appeal out of time. _____
                                                                                    (party)

desires to appeal the judgment in this action entered on _____ but failed to file a
                                                                        (day)

notice of appeal within the required number of days because:

[Explain here the "excusable neglect" or "good cause" which led to your failure to file a notice of appeal within the
required number of days.]

_____
(Signature)

_____
(Address)

_____
(City, State and Zip Code)

Date: _____          (    ) _____-_____
                                                    (Telephone Number)

**Note:** You may use this form, together with a copy of Form 1, if you are seeking to appeal a judgment and
did not file a copy of Form 1 within the required time. If you follow this procedure, these forms must be
received in the office of the Clerk of the District Court no later than 60 days of the date which the judgment
was entered (90 days if the United States or an officer or agency of the United States is a party).

FORM 2

APPEAL FORMS
Docket Support Unit                                              Revised:  March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

```
------------------------------------------X
                                          |
                                          |         NOTICE OF APPEAL
                                          |              AND
              -V-                         |    MOTION FOR EXTENSION OF TIME
                                          |
                                          |        civ.         (    )
                                          |
------------------------------------------X
```

1.    Notice is hereby given that _____ hereby appeals to
                                                    (party)

the United States Court of Appeals for the Second Circuit from the judgment entered on _____.
                        [Give a description of the judgment]

2.    In the event that this form was not received in the Clerk's office within the required time

_____ respectfully requests the court to grant an extension of time in
              (party)

accordance with Fed. R. App. P. 4(a)(5).

      a.    In support of this request, _____ states that
                                                          (party)

this Court's judgment was received on _____ and that this form was mailed to the
                                                    (date)

court on _____ .
                  (date)

                                              _____
                                                        (Signature)

                                              _____
                                                        (Address)

                                              _____
                                                  (City, State and Zip Code)

Date: _____      (    ) _____-_____
                                              (Telephone Number)

**Note:** You may use this form if you are mailing your notice of appeal and are not sure the Clerk of the
District Court will receive it within the 30 days of the date on which the judgment was entered (60 days if
the United States or an officer or agency of the United States is a party).

FORM 3

APPEAL FORMS
Docket Support Unit                                          Revised:  March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

--------------------------------------------------X
|
|                                                  **AFFIRMATION OF SERVICE**
|
-V-                             |
|
|                                                  civ.              (    )
|
--------------------------------------------------X

I, _____, declare under penalty of perjury that I have

served a copy of the attached _____

_____

upon _____

_____

whose address is: _____

_____

Date: _____
         New York, New York

                                        _____
                                                      (Signature)

                                        _____
                                                      (Address)

                                        _____
                                                (City, State and Zip Code)

FORM 4

APPEAL FORMS
Docket Support Unit                                         Revised:  March 4, 2003